KENNETH E. KELLER (SBN 71450) kkeller@kksrr.com
ANNE E. KEARNS (SBN: 183336) akearns@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone:      (415) 249-8330
Facsimile:      (415) 249-8333

Attorneys for Plaintiff Chanel, Inc.

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHANEL, INC.,<br>a New York corporation,<br><br>        Plaintiff,<br>v.<br><br>US880, a business entity of unknown<br>makeup, and DOES 1-10,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CV 10-02601 PJH<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with the Declarations of Anne E. Kearns, Stephen M. Gaffigan, and Adrienne Hahn Sisbarro, and [Proposed] Order and Permanent Injunction]<br><br>Date:      February 16, 2011<br>Time:      9:00 AM<br>Dept:      Courtroom 3, 3rd Floor<br>Judge:    Hon. Phyllis J. Hamilton |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 16, 2011 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 3rd Floor, 1301 Clay Street, Oakland, California, before the Honorable Phyllis J. Hamilton, Plaintiff, Chanel, Inc. ("Chanel") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 55, for an Order Granting a Final Default Judgment against Defendant US880, a business entity of unknown makeup ("Defendant").   The motion is based upon this notice, the accompanying memorandum of points and authorities, the attached declarations and exhibits thereto, and such other matters as we may call to the Court's attention at or before the time of the hearing.  Defendant has been duly noticed of this motion and the hearing date.

For the foregoing reasons, Chanel respectfully requests the Court:

1.   Enter Final Default Judgment against Defendant as to both claims for relief in the Complaint;

2.   Enter a permanent injunction against Defendant;

3.   Award Chanel $198,000.00 in statutory damages against Defendant pursuant to 15. U.S.C. § 1117(c);

4.   Award Chanel costs in the amount of $700.00 against Defendant pursuant to 15 U.S.C. § 1117(a);

5.   Enter an Order requiring the Subject Domain Names and the Additional Domain Names be cancelled or at Chanel's option, transferred to Chanel by the Defendant and/or the Registrars and/or Registries, so the associated websites may no longer be used as a means of selling counterfeit and infringing goods using the Chanel Marks;

6.   Enter an Order that, upon Chanel's request, the top level domain (TLD) Registries for the Subject Domain Names and the Additional Domain Names shall place the Subject Domain Names and the Additional Domain Names on Registry Hold status within 30 days of receipt of the Court's Order, thus removing them from

the TLD zone files maintained by the Registry which link the domain names to the IP addresses where the associated websites are hosted; and

Dated:  January 6, 2011                    KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP


By: _____/S/_____
       Anne E. Kearns
       Attorneys for Plaintiff, Chanel, Inc.

3

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   CHANEL IS ENTITLED TO JUDGMENT AGAINST DEFENDANT ............................. 1

      A.    Procedural Background.............................................................................. 1

      B.    Defendant's Infringing Acts. ..................................................................... 2

III.  THE RELIEF REQUESTED IS APPROPRIATE ..................................................... 4

      A.    Default Judgment is Proper....................................................................... 5

      B.    A Permanent Injunction Should Be Entered. ............................................ 6

      C.    Chanel Elects an Award of Statutory Damages as to Count I. ................ 10

      D.    Chanel's Damages as to Count II for False Designation of Origin. ......... 14

      E.    Costs Should Be Awarded. ...................................................................... 14

IV.   CONCLUSION.................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Cases**

Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.,
    944 F.2d 1446, 19 U.S.P.Q.2d 1491 (9th Cir. 1991) ................................................. 12

Adobe Systems, Inc. v. Taveira,
    Case No.  C 08-2436 PJH, 2009 WL 506861 (N.D. Cal. Feb. 27, 2009) ..................... 6, 11, 13, 14

Aldabe v. Aldabe,
    616 F.2d 1089 (9th Cir. 1980) ..................................................................... 5

Apple Computer, Inc. v. Formula Int'l, Inc.,
    725 F.2d 521 (9th Cir. 1984) ....................................................................... 7

Brother Records, Inc. v. Jardine,
    318 F.3d 900 (9th Cir.2003) ....................................................................... 5

Century 21 Real Estate Corp. v. Sandlin,
    846 F.2d 1175 (9th Cir. 1988) .................................................................... 5, 6

Chanel, Inc. v. Barreto,
    Case No. CV 06-2768 SVW (RCx) (C.D. Cal. June 18, 2007) ................................ 9, 12

Chanel, Inc. v. Doan,
    No. C 05-03464 VRW, 2007 WL 781976 (N.D. Cal. March 13, 2007) ......................... 4

Chanel, Inc. v. Dodd,
    Case No. 3:09-cv-03958-VRW (N.D. Cal. March 3, 2010) ...................................... 9

Chanel, Inc. v. Giovanni,
    Case No. 2:09-cv-01420-PMP-RJJ (D. Nev. Feb. 25, 2010) ................................... 9

Chanel, Inc. v. Gordashevsky,
    Case No. 05-5270 (RBK)(AMD) (D.N.J. April 7, 2008) ........................................ 10

Chanel, Inc. v. Hugo Rios et al.,
    Case No. CV-03-273-RSWL(PJW) (C.D. Cal. 2003) ............................................. 14

Chanel, Inc. v. Jatinder P. Singh,
    slip op. 56, No. 2:05-cv-04749-CAS-PJW (C.D. Cal. Aug. 13, 2007) ......................... 14

Chanel, Inc. v. Kaufman,
    Case No. 08-CV-60621-JAL (S.D. Fla. Oct. 23, 2008) ......................................... 10

Chanel, Inc. v. Long,
    Case No. 2:08-cv-01547-JCM-LRL (D. Nev. April 28, 2009) ................................... 9

Chanel, Inc. v. Paley,
    Case No. C-09-04979 MHP (N.D. Cal. March 25, 2010) ....................................... 9

Chanel, Inc. v. Tshimanga,
    Case No. 3:07-cv-03592-SC (N.D. Cal. Aug. 1, 2008) .......................................... 14

ii

Chanel, Inc. v. Xu,
    Case No. 07-CV-1783-JAH (AJB) (S.D. Cal. Oct. 22, 2008) ...................................... 10

Chanel, Inc. v. Zhang,
    Case No. 3:09-cv-01977-MMC (N.D. Cal. Dec. 7, 2009).......................................... 9, 14

Earthquake Sound Corp. v. Bumper Indus.,
    352 F.3d 1210 (9th Cir. 2003) .................................................................................. 11

eBay Inc., v. MercExchange, LLC,
    547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) ........................................... 7

Eitel v. McCool,
    782 F.2d 1470 (9th Cir. 1986) .................................................................................... 5

Ford Motor Co. v. Cross,
    441 F. Supp. 2d 837 (E.D. Mich. 2006).................................................................... 9

Harris v. Emus Record Corp.,
    734 F.2d 1329, 222 U.S.P.Q. 466 (9th Cir. 1984) ................................................... 11

Hotmail Corp. v. Van$ Money Pie Inc.,
    47 U.S.P.Q.2d 1020, 1998 WL 388389 (N .D. Cal. Apr. 16, 1998)............................. 7

Interstellar Starship Servs., Ltd. v. Epix, Inc., 184 F.3d 1107 (9th Cir. 1999), cert. denied, 528 U.S.
    1155, 120 S.Ct. 1161, 145 L. Ed.2d 1073 (2000) ...................................................... 12

Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628 (9th Cir.2008)............................................. 5

Levi Strauss & Co. v. Shilon, 121 F.3d 1309 (9th Cir.1997) ........................................... 6

Microsoft Corp. v. Online Datalink Computer, Inc., No. 07cv01165 WQH (CAB), 2008 WL
    1995209 (S.D. Cal. May 6, 2008)............................................................................... 14

Official Airline Guides, Inc.  v. Goss,
    6 F.3d 1385 (9th Cir. 1993) ..................................................................................... 11

Peer Int'l Corp. v. Pausa Records, Inc.,
    909 F.2d 1332 (9th Cir. 1990) .................................................................................. 10

Pepsico, Inc. v. Cal. Sec. Cans,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ...................................................................... 8

PepsiCo. v. Triunfo-Mex, Inc.,
    189 F.R.D. 431 (C.D. Cal. 1999) ................................................................................ 5

Philip Morris U.S.A., Inc. v. Castworld Prods., Inc.,
    219 F.R.D. 494 (C.D. Cal. 2003) ....................................................................... 5, 8, 14

Philip Morris USA v. Otamedia Ltd.,
    331 F. Supp.2d 228, 230-31 (S.D.N.Y. 2004) ............................................................ 9

Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.,
    No. Civ. A. 96-6961, 1998 WL 767440 (E.D. Pa. Nov.3, 1998)............................... 11

iii

Rodeo Collection, Ltd. v. West Seventh,
  812 F.2d 1215 (9th Cir. 1987). .................................................................. 7

Rolex Watch USA, Inc. v. Jones,
  No. 99-CIV-2359, 2000 WL 1528263 (S.D.N.Y. Oct. 13, 2000)................................ 12

Sara Lee Corp.,
  36 F. Supp.2d at 170 ........................................................................ 14

Swann v. Charlotte-Mecklenburg Bd. of Educ.,
  402 U.S. 1 (1971)........................................................................... 9

Televideo Systems, Inc. v. Heidenthal,
  826 F.2d 915 (9th Cir. 1987) ............................................................... 4

Tommy Hilfiger Licensing, Inc. v. Goody Family Clothing, Inc.,
  No. 00-1934, 2003 U.S. Dist. LEXIS 8788 (N.D. Ga. 2003) ................................. 14

Two Pesos, Inc. v. Taco Cabana, Inc.
  505 U.S. 763, 112 S.Ct. 2753 (1992)...................................................... 6

**Statutes**

15 U.S.C. § 1116 .............................................................................. 6

15 U.S.C. § 1116(a) ..................................................................... 5, 6, 9

15 U.S.C. § 1117 ............................................................................. 14

15 U.S.C. § 1117(a) ........................................................................... 5

15 U.S.C. § 1117(c) ................................................................ 1, 5, 10, 15

15 U.S.C. § 1117(c)(2) .................................................................. 10, 13

15 U.S.C. § 1117(e) ......................................................................... 13

15 U.S.C. § 1125 ............................................................................. 9

15 U.S.C. § 1125(a) ......................................................................... 14

15 U.S.C. §§ 1114(1)(a) ...................................................................... 5

15 U.S.C. §§ 1125(d)(1)(C) ................................................................... 9

28 U.S.C. § 1338(a) .......................................................................... 1

28 U.S.C. § 1391 ............................................................................. 1

28 U.S.C. § 1331 ............................................................................. 1

iv

**Other Authorities**

Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083 ................................................................................................. 13

S. REP. NO. 104-177, pt. V(7) (1995) ............................................................................................. 11

**Rules**

Federal Rules of Civil Procedure Rule 55(a) ................................................................................... 2

v

**MEMORANDUM OF POINTS AND AUTHORITES**

## I.   INTRODUCTION

Plaintiff, Chanel, Inc. ("Chanel") initiated this action against Defendant US880, a business entity of unknown makeup ("Defendant") d/b/a the Internet websites operating under the domain names listed on Schedule "A" annexed hereto (collectively the "Subject Domain Names") and the Internet websites operating under the domain names listed on Schedule "B" annexed hereto (collectively the "Additional Domain Names")[1] through the filing of a Complaint for trademark infringement and counterfeiting and false designation of origin.  Defendant is in default, and the prerequisites for a default judgment have been met.  As relief, Chanel seeks an entry of final default judgment finding Defendant liable on both counts of Chanel's Complaint.  Chanel prays such judgment include the entry of a permanent injunction and an award of statutory damages to Chanel for Defendant's willful counterfeiting within the $1,000.00 to $2,000,000.00 range pursuant to 15 U.S.C. § 1117(c).  In addition, Chanel requests the Court cancel, or at Chanel's election, transfer the Subject Domain Names and the Additional Domain Names to Chanel to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits of Chanel's trademarks and infringing upon Chanel's rights.

## II.   CHANEL IS ENTITLED TO JUDGMENT AGAINST DEFENDANT

### A.   Procedural Background.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Personal jurisdiction over the Defendant and Venue in this Judicial District are proper under 28 U.S.C. § 1391 as Defendant directs business activities toward consumers within this District and causes harm to Chanel's business within this District through the fully interactive Internet websites operating under the Subject Domain Names and the Additional Domain Names.

Chanel initiated this action against Defendant through the filing of a Complaint for federal trademark infringement and counterfeiting (Count I) and false designation of origin (Count II).  On

---

[1] Schedule "A" lists the domain names originally identified in Plaintiff's Complaint; Schedule "B" lists the additional domain names Plaintiff discovered Defendant was operating after the filing of the Complaint.

1

September 17, 2010, the Court granted Chanel's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3). (e-docket. 12.)[2]  Pursuant to the Court's Order, on September 20, 2010, Defendant was served with a copy of the Summons and Complaint via email service. (Declaration of Anne E. Kearns ["Kearns Decl."] ¶ 2, filed herewith. See also e-docket 13.) More than 21 days have elapsed since the date on which service of the Summons and Complaint was effective. (Kearns Decl. ¶ 3.) As of the date of this Motion, Defendant has neither filed a responsive pleading to the Complaint, requested an enlargement of time to respond to the Complaint, nor has the Defendant entered a formal appearance *pro se* or by counsel on its behalf. (Kearns Decl. ¶ 4.) Defendant is a business entity such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply. (Kearns Decl. ¶ 5.) On October 18, 2010, Plaintiff filed an Application for Entry of Clerk's Default. (Kearns Decl. ¶ 6. See also e-docket 14.) On October 19, 2010, the Clerk entered Default against the Defendant for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Kearns Decl. ¶ 6. See also e-docket 15.)

Chanel now moves the Court to grant Final Default Judgment against the Defendant. The Complaint, Pleadings, and Declarations filed in support of this Motion clearly support a finding that the Defendant violated Chanel's rights under the Lanham Act. Accordingly, Final Default Judgment pursuant to FED. R. CIV. P. 55 should be entered against the Defendant.

### B.   Defendant's Infringing Acts.

As alleged by Chanel, admitted by default, and established by the evidence submitted herewith, the Defendant is the owner and operator of the fully interactive commercial Internet websites operating under the Subject Domain Names and the Additional Domain Names, and thus is the active, conscious, and dominant force behind the sale of handbags, wallets, watches, sunglasses, scarves, swimwear, and other goods bearing trademarks which are exact copies of the Chanel Marks

---

[2]Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) and Memorandum in Support Thereof, together with supporting exhibits and declarations, are incorporated herein by reference.

(the "Counterfeit Goods").   (See Declaration of Adrienne Hahn Sisbarro in Support of Chanel's Motion for Entry of Final Default Judgment Against Defendant ["Hahn Decl."] ¶¶ 10-11, filed herewith; Declaration of Stephen M. Gaffigan in Support of Chanel's Motion for Entry of Final Default Judgment Against Defendant ["Gaffigan Decl."] ¶¶ 3-5, filed herewith.   See also relevant web pages from Defendant's Internet websites operating under the Additional Domain Names and the Subject Domain Names attached as Composite Exhibit "1" to the Gaffigan Decl. and as Composite Exhibit "1" to the Declaration of Stephen M. Gaffigan in Support of Chanel's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) ["Gaffigan Decl. in Support of Mot. for Alt. Serv."], e-docket 11-6, respectively [collectively "the Defendant's Websites"].)

Further, as admitted by the Defendant through default, at all times relevant, the Defendant had full knowledge of Chanel's ownership of the Chanel Marks including its exclusive right to use and license such intellectual property and the goodwill associated therewith. (See Complaint ¶¶ 10, 18, 23.)   The Defendant does not have, nor has it ever had, the right or authority to use the Chanel Marks for any purpose.  (See Hahn Decl. ¶ 9.)  However, despite its known lack of authority to do so, the Defendant is engaged in the activity of promoting and otherwise advertising, selling, offering for sale and distributing its Counterfeit Goods via its Internet websites operating under the Subject Domain Names and the Additional Domain Names.  (See Gaffigan Decl. ¶¶ 3-5; Hahn Decl. ¶¶ 10-11; Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl. and as Composite Exhibit 1 to the Gaffigan Decl. in Support of Mot. for Alt. Serv.)

Chanel's evidence, obtained as a result of its investigation of the Defendant, demonstrates the Defendant is engaged in the fraudulent promotion, advertisement, distribution, offering for sale and sale of goods bearing counterfeits of the Chanel Marks.   As part of its ongoing investigations regarding the sale of counterfeit Chanel branded products, a representative of Chanel, Adrienne Hahn Sisbarro, reviewed and visually inspected all of the items bearing the Chanel Marks offered for sale on the Defendant's Internet websites operating under the Subject Domains Names and determined the products offered for sale were non-genuine Chanel products.  (Hahn Decl. ¶¶ 10-11.)

3

Indeed, Defendant readily identifies many of its products as "replica" on several its websites.  (Hahn Decl. ¶ 10.  See generally Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl. and as Composite Exhibit 1 to the Gaffigan Decl. in Support of Mot. for Alt. Serv.)

Subsequently, after filing the Complaint in this matter, Chanel received information that the Defendant was also counterfeiting and infringing the Chanel Marks by using additional Internet websites.[3]  These websites also advertise and offer for sale products bearing various counterfeits of the Chanel trademarks or provide support and direct customer traffic to websites advertising and offering for sale the counterfeit Chanel products.  (Gaffigan Decl. ¶ 3.)  Ms. Hahn Sisbarro's review of the items bearing the Chanel Marks offered for sale on the Defendant's Internet websites included the Additional Domain Names, and she determined the products offered for sale were non-genuine Chanel products.  (Hahn Decl. ¶¶ 10-11.)

## III.    THE RELIEF REQUESTED IS APPROPRIATE

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b) following the entry of default by the court clerk under Rule 55(a).  Fed. R. Civ. P. 55(b).  Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true.  Chanel, Inc. v. Doan, No. C 05-03464 VRW, 2007 WL 781976, at *2 (N.D. Cal. March 13, 2007) (citing Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987)).  As such, upon default, Defendant is deemed to have admitted all well-pled allegations in Chanel's Complaint.  See Chanel, Inc., 2007 WL 781976, at *2.

Although the procedural requirements for a default[4] are satisfied, the decision to grant or to deny a request for default judgment lies within the court's sound discretion.  Aldabe v. Aldabe, 616

---

[3] Specifically, Chanel received information that the Defendant was also counterfeiting and infringing the Chanel Marks by using additional Internet websites operating under the domain names identified on Schedule "B" annexed hereto (the "Additional Domain Names").

[4] Pursuant to the Federal Rules, a request of entry of default judgment requires a plaintiff to set forth: 1) when and against which party default was entered; 2) the identification of the pleadings to which default was entered; 3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; 4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and 5) that notice of the application has been served on the defaulting party, if required.  FED. R. CIV. P. 55(b)(2).  As previously mentioned in section II(A) of this Memorandum, and as set forth in the Declaration of Anne E. Kearns, Chanel has satisfied the procedural requirements for default judgment.  (See pages 2-3, supra; Kearns Decl. ¶¶ 2-6.)

F.2d 1089, 1092 (9th Cir. 1980).   When exercising this discretion, the court is guided by the following factors:

> (1) the merits of the plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of the Federal Rules of Civil Procedure favoring a decision on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Nonetheless, despite this discretionary standard, "default judgments are more often granted than denied."  Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting PepsiCo. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999)).   Additionally, under the Lanham Act, a plaintiff is entitled to a permanent injunction, statutory damages, and costs. 15 U.S.C. §§ 1116(a), 1117(a), 1117(c).   Accordingly, this Court should grant Chanel's request for relief.

## A.      Default Judgment is Proper.

The Lanham Act imposes liability upon those who use a trademark that is likely to cause confusion with a registered mark.  See 15 U.S.C. §§ 1114(1)(a), 1125(a)(1).   In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Chanel must demonstrate Defendant is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.  See 15 U.S.C. § 1114(1)(a); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir.1988).   In evaluating a trademark infringement claim, the critical determination is "whether [the] alleged trademark infringer's use of [the Plaintiff's] mark creates a likelihood that the consuming public will be confused as to who makes that product."  Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir.2008) (quoting Brother Records, Inc. v. Jardine, 318 F.3d 900, 908 (9th Cir.2003)) (quotation marks omitted).

5

NOTICE OF MOTION AND MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AGAINST DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 10-02601 PJH

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Chanel must prove that Defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval, of defendant's goods by plaintiff. 15 U.S.C. § 1125(a)(1).  As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

The well-plead factual allegations of Chanel's Complaint properly allege the elements for each of the above claims and supports liability on both Counts of the Complaint.  Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against the Defendant.

**B.     A Permanent Injunction Should Be Entered.**

The Lanham Act authorizes a district court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  See Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir.1997). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988).  Moreover, even in a default judgment setting, injunctive relief is available.  See, e.g., Adobe Systems, Inc. v. Taveira, Case No.  C 08-2436 PJH, 2009 WL 506861 (N.D. Cal. Feb. 27, 2009).  Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin the Defendant from infringing any of Chanel's intellectual property rights, including the Chanel Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  eBay Inc., v.

6

1   _MercExchange, LLC,_ 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).  Chanel

2   satisfies each element, warranting permanent injunctive relief, because the Defendant has unlawfully

3   used Chanel's goodwill to make a profit.

4           Defendant's actions merit permanent injunctive relief, not only to protect Chanel's

5   reputation, but also to protect consumers from being deceived as to the quality and source of

6   products bearing Chanel's trademarks.  The facts alleged in Chanel's Complaint, substantiated by

7   the evidence submitted herewith, support a finding that Defendant is using marks identical to or

8   altered to be identical to those registered by Chanel to advertise, promote, and sell the same kinds of

9   goods that Chanel sells.  (See Compl. ¶ 31.  See also Hahn Decl. ¶¶ 10-11; Defendant's Websites

10  attached as Composite Exhibit "1" to the Gaffigan Decl. and as Composite Exhibit "1" to the

11  Gaffigan Decl. in Support of Mot. for Alt. Serv.)  The net effect of Defendant's actions will be to

12  result in the confusion of consumers who will believe Defendant's counterfeit goods are genuine

13  goods originating from and approved by Chanel.  (See Compl. ¶ 19.)  These unlawful actions have

14  caused irreparable injury to Chanel, and will continue to do so if Defendant is not permanently

15  enjoined.  (See Compl. ¶¶ 35, 42; Hahn Decl. ¶ 12.)  As the Ninth Circuit expressed, "[O]nce the

16  Plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed

17  that the Plaintiff will suffer irreparable harm if injunctive relief does not issue."  _Rodeo Collection,_

18  _Ltd. v. West Seventh,_ 812 F.2d 1215, 1220 (9th Cir. 1987).  Such a finding of irreparable injury

19  following a showing of likelihood of confusion is virtually always made in a case such as this, where

20  the Plaintiff has demonstrated that it will lose control of its reputation as a result of the Defendant's

21  activities.  See _Apple Computer, Inc. v. Formula Int'l, Inc.,_ 725 F.2d 521, 526 (9th Cir. 1984)

22  (irreparable harm created by confusion can consist of the resulting loss of control by plaintiff over its

23  reputation and goodwill).  See also _Hotmail Corp. v. Van$ Money Pie Inc.,_ 47 U.S.P.Q.2d 1020,

24  1026, C 98-20064 JW, 1998 WL 388389, at *7 (N.D. Cal. Apr. 16, 1998) (loss of goodwill and

25  reputation as a result of customer confusion is not easily quantified and not adequately compensated

26  with money damages).  Additionally, the Defendant's failure to respond or otherwise appear in this

27  action makes it difficult for Chanel to prevent further infringement.  See _Pepsico, Inc. v. Cal. Sec._

28

7

1  Cans, 238 F. Supp. 2d 1172, 1178 (C.D. Cal. 2002) (granting injunctive relief, in part because "in
2  the absence of opposition by the non-appearing defendant, it cannot be said that it is 'absolutely
3  clear' that Defendant's allegedly wrongful behavior has ceased and will not begin again"); Philip
4  Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003) ("Failure to grant
5  the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.").  In
6  fact, Defendant has persisted in violating Chanel's trademarks rights despite having actual notice of
7  this suit against it.  (See Composite Exhibit 1 to Gaffigan Decl.)

8         Moreover, it can hardly be said that Defendant faces hardship in refraining from its willful
9  infringement of Chanel's trademarks, whereas Chanel faces hardship from loss of sales and its
10  inability to control its reputation.  Indeed, Defendant has no cognizable hardship, as it will be
11  prohibited from selling counterfeit goods, which is an illegal act.  Finally, the public has an interest
12  in the issuance of a permanent injunction against Defendant in order to prevent consumers from
13  being misled by Defendant's products.  Ultimately, the permanent injunction will prevent consumer
14  confusion and deception in the marketplace, and will protect Chanel's property interest in its Marks,
15  which are the touchstones of trademark law.

16         Furthermore, as admitted by Defendant through default, (i) the Subject Domain Names and
17  the Additional Domain Names are essential components of Defendant's counterfeiting and
18  infringing activities; and (ii) the domain names themselves are the means by which Defendant
19  furthers its counterfeiting scheme and causes harm to Chanel.  (Compl. ¶ 9.)  Therefore, in order to
20  effectuate the injunction as a practical matter, the Subject Domain Names and the Additional
21  Domain Names should be ordered transferred to Chanel's control by Defendant, its Registrars and/or
22  Registries, where they may be disabled.  Absent the transfer of the Subject Domain Names and the
23  Additional Domain Names, Defendant will remain free to continue infringing Chanel's trademarks
24  with impunity and will continue to benefit from the Internet traffic to those websites built through
25  the unlawful use of the Chanel Marks.

26         The Court's powers of equity are sufficiently broad to tailor an injunction in the means
27  necessary to preclude future infringement.  See e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,

28
                                             8
_____

402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context. See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Many Courts have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein. See Chanel, Inc. v. Paley, Case No. C-09-04979 MHP (N.D. Cal. March 25, 2010) (awarding transfer of seventeen (17) domain names as part of grant of permanent injunction and final default judgment); Chanel, Inc. v. Dodd, Case No. 3:09-cv-03958-VRW (N.D. Cal. March 3, 2010) (awarding transfer of nineteen (19) domain names as part of grant of permanent injunction and final default judgment); Chanel, Inc. v. Zhang, Case No. 3:09-cv-01977-MMC (N.D. Cal. Dec. 7, 2009) (awarding transfer of fifteen (15) domain names as part of the grant of permanent injunction and final default judgment); Chanel, Inc. v. Barreto, Case No. CV 06-2768 SVW (RCx) (C.D. Cal. June 18, 2007) (awarding transfer of the domain name at issue as part of grant of permanent injunction and final default judgment); Chanel, Inc. v. Giovanni, Case No. 2:09-cv-01420-PMP-RJJ (D. Nev. Feb. 25, 2010) (awarding transfer of three (3) domain names as part of the grant of permanent injunction and final default judgment); Chanel, Inc. v. Long, Case No. 2:08-cv-01547-JCM-LRL (D. Nev. April 28, 2009) (awarding transfer of one (1) domain name as part of the grant of permanent injunction and final default judgment); Chanel, Inc. v. Xu, Case No.

9

07-CV-1783-JAH (AJB) (S.D. Cal. Oct. 22, 2008) (awarding transfer of six (6) domain names as part of the grant of permanent injunction and final default judgment); <u>Chanel, Inc. v. Gordashevsky</u>, Case No. 05-5270 (RBK)(AMD) (D.N.J. April 7, 2008) (awarding transfer of twelve (12) domain names); <u>Chanel, Inc. v. Kaufman</u>, Case No. 08-CV-60621-JAL (S.D. Fla. Oct. 23, 2008) (awarding transfer of three (3) domain names as part of grant of permanent injunction and final default judgment).

   As demonstrated by the Internet website printouts attached as Composite Exhibit 1 to the Declarations of Stephen M. Gaffigan, Defendant's counterfeiting activities continue to this day despite the fact that it has been expressly notified of the illegality of its actions through service of the Complaint in this matter upon it.   Accordingly, the Court should eliminate the means by which Defendant is conducting its unlawful activities by transferring the Subject Domain Names and the Additional Domain Names to Chanel.

   **C.    Chanel Elects an Award of Statutory Damages as to Count I.**

   As alleged in the Complaint, confirmed in the Declarations filed in this action, and admitted by default, the handbags, wallets, watches, sunglasses, scarves, and swimwear distributed, advertised, sold, and/or offered for sale by Defendant bore counterfeits of the Chanel Marks.  (Compl. ¶¶ 3-9, 18.  <u>See also</u> Hahn Decl. ¶ 10; and Defendant's Websites attached as Composite Exhibit 1 to Gaffigan Decl. and as Composite Exhibit 1 to Gaffigan Decl. in Support of Mot. for Alt. Serv., e-docket 11-7.)  In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of goods.  In addition, if the Court finds a defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Chanel elects to recover an award of statutory damages as to Count I of the Complaint.

10

The Court has wide discretion to set an amount of statutory damages. <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>, 909 F.2d 1332, 1336 (9th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991) (citing <u>Harris v. Emus Record Corp.</u>, 734 F.2d 1329, 1335, 222 U.S.P.Q. 466, 470 (9th Cir. 1984) (concluding that the Court's discretion in setting the amount of copyright damages is wide, "constrained only by specific maxima and minima.")). Indeed, an award of statutory damages has been determined to be an appropriate remedy even for infringements that caused no proved actual damages. <u>See</u> <u>Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.</u>, No. Civ. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov.3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  <u>See</u> e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.)  This case is no exception.

Additionally, a defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. <u>Earthquake Sound Corp. v. Bumper Indus.</u>, 352 F.3d 1210, 1216-17 (9th Cir. 2003).  A Defendant is deemed to have acted willfully where the Defendant knowingly and intentionally infringes the Plaintiff's intellectual property rights. <u>See</u> <u>id</u>.  Willfulness may also be inferred from the Defendant's default.  (Compl. ¶ 23.  <u>See</u> <u>Adobe Systems, Inc. v. Taveira</u>, Case No. C 08-2436 PJH, 2009 WL 506861, at *5 (N.D. Cal. Feb. 27, 2009) (upon default, Plaintiff's unrebutted allegations that Defendant's conduct was willful taken as true)).  In either case, the defendant is deemed to have the requisite knowledge that its acts constitute an infringement.  <u>See</u> <u>id</u>.

The Chanel Marks are renowned worldwide as identifiers of high quality merchandise, and the fact that Defendant sold goods using marks which are identical or altered to be identical to such strong marks shows its desire and purpose to trade upon Chanel's goodwill.  The Ninth Circuit has held that "when an alleged infringer knowingly adopts a Mark similar to another's, courts will presume an intent to deceive the public." <u>Official Airline Guides, Inc.  v. Goss</u>, 6 F.3d 1385, 1394 (9th Cir. 1993).  Indeed, in a case of clear-cut copying such as this it is appropriate to presume

11

Defendant intended to cause confusion and benefit from the Plaintiff's reputation, to the detriment of Plaintiff.  Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc., 944 F.2d 1446, 1456; 19 U.S.P.Q.2d 1491, 1499 (9th Cir. 1991); Interstellar Starship Servs., Ltd. v. Epix, Inc., 184 F.3d 1107, 1111 (9th Cir. 1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1161, 145 L. Ed.2d 1073 (2000).

Express evidence of the Defendant's intent to capitalize on the reputation and goodwill of the Chanel Marks is also found on the pages of the Defendant's websites on which it acknowledges Chanel's trademark rights and disclaims association by identifying its goods as "replica." (See generally Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl. and as Composite Exhibit 1 to the Gaffigan Decl. in Support of Mot. for Alt. Serv., e-docket 11-7.)  Other courts have considered the effect of a disclaimer similar to the one used by the Defendant and found the use of such a "replica" disclaimer to be evidence of bad faith and illustrative of the intent to capitalize on the value and renown of Chanel's Marks.  See Rolex Watch USA, Inc. v. Jones, No. 99-CIV-2359, 2000 WL 1528263, at *3 (S.D.N.Y. Oct. 13, 2000) ("bad faith is manifest" when goods are identified as replicas); Chanel, Inc. v. Barreto, No. CV06-2768-SVW-RC, (C.D. Cal. Feb. 2, 2007) (order granting summary judgment) ("A Defendant's 'bad faith is manifest' where the products are marketed as 'replicas.'").  Furthermore, Defendant's ownership of a large quantity of domain names supports an inference that Defendant has engaged in high volume sales of its counterfeit versions of Chanel's products.  In any event, however, Defendant has defaulted on Chanel's allegations of willfulness. (Compl. ¶ 23.)

Moreover, Defendant has deliberately used false information in registering, establishing, and purchasing the Subject Domain Names in an attempt to escape liability for its wanton conduct.  (See Composite Exhibit 2, WHOIS data records, attached to Gaffigan Decl. in Support of Mot. for Alt. Serv., e-docket 11-8; Declaration of Huang Yu Ting in Support of Chanel's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) ¶¶ 4-5, e-docket 11-1; Declaration of Jason Holmes in Support of Chanel's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to

Federal Rule of Civil Procedure 4(f)(3) ¶ 8, e-docket 11-2.)  Defendant's course of conduct in providing "materially false contact information to a domain name registrar" creates a rebuttable presumption of willfulness, pursuant to 15 U.S.C. § 1117(e), which Defendant has wholly failed to contest.  In any event, the Defendant has defaulted on Chanel's allegations of willfulness.  (See Compl. ¶ 23.)  See also Adobe Systems, Inc. v. Taveira, Case No. C 08-2436 PJH, 2009 WL 506861, at *5 (N.D. Cal. Feb. 27, 2009) (finding a Court may infer willfulness from the Defendant's default.))  As such, the Court should award a significant amount of statutory damages available under the Lanham Act to ensure the Defendant does not continue its intentional and willful counterfeiting and infringing activities.

The only available evidence in this case demonstrates the Defendants distributed, advertised, offered for sale, and/or sold at least six (6) types of goods, namely handbags, wallets, watches, sunglasses, scarves, and swimwear, bearing marks which were in fact counterfeits of the Chanel Marks protected by eleven (11) Federal trademark registrations for such goods.  (See Defendant's Websites attached as Composite Exhibit 1 to Gaffigan Decl. and as Composite Exhibit 1 to the Gaffigan Decl. in Support of Mot. for Alt. Serv.)[5]  Based on the above considerations, Chanel respectfully suggests the Court could start with the baseline statutory minimum award of $1,000.00, and treble it to reflect the Defendant's willfulness and for the purpose of deterrence.  The result would be $3,000.00 per registered Chanel Mark counterfeited (11) per type of goods sold (6 – handbags, wallets, watches, sunglasses, scarves, and swimwear), for a total award of amount $198,000.00 in statutory damages. Chanel believes that amount fairly achieves the statutory goals of compensation, punishment, and deterrence.

The requested damages amount is at the very low end of the range prescribed under 15 U.S.C. § 1117(c)(2) and is appropriate based on Defendant's willful counterfeiting of the Chanel Marks. The award should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Chanel's trademarks, compensate Chanel, and punish Defendant, all stated

---

[5] A chart outlining each Chanel Registration and examples of the infringement thereof is attached as Exhibit 3 to the Gaffigan Decl.

13

goals of 15 U.S.C. § 1117 (c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; <u>Taveira</u>, 2009 WL 506861, at *6 (stating that a "significant damages award is necessary to deter a defendant who has intentionally and willfully infringed plaintiff's rights and who is aware of these proceedings but attempts to avoid answering for his conduct by failing to appear").

Other courts have granted statutory damages under the Lanham Act at a level similar to or greater than Chanel's request herein.  See, e.g., <u>Adobe Systems, Inc. v. Taveira</u>, Case No. C 08-2436 PJH, 2009 WL 506861, at *5 (N.D. Cal. Feb. 27, 2009) (awarding $250,000.00 for five trademarks); <u>Chanel, Inc. v. Zhang</u>, Case No. 3:09-cv-01977-MMC (N.D. Cal. Dec. 7, 2009) (awarding Plaintiff Chanel $ 462,000.00 for fourteen trademarks and awarding Plaintiff Louis Vuitton $594,000.00 for eighteen trademarks); <u>Chanel, Inc. v. Tshimanga,</u>  (Case No. 3:07-cv-03592-SC) (N.D. Cal. Aug. 1, 2008) (awarding $450,000.00 for nine trademarks); <u>Microsoft Corp. v. Online Datalink Computer, Inc.</u>, No. 07cv01165 WQH (CAB), 2008 WL 1995209, *4 (S.D. Cal. May 6, 2008) (awarding $700,000.00 for seven trademarks); <u>Philip Morris U.S.A., Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 501-02 (C.D. Cal. 2003) (awarding $2,000,000 for two trademarks); <u>Tommy Hilfiger Licensing, Inc. v. Goody Family Clothing, Inc.</u>, 2003 U.S. Dist. LEXIS 8788, at *70 (N.D. Ga. 2003) (awarding $2,100,000.00). Chanel's request is reasonable.

**D.     Chanel's Damages as to Count II for False Designation of Origin.**

In addition to federal trademark counterfeiting and infringement (Count I), Chanel's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II).   As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117.   Accordingly, judgment on Count II should be limited to the amount awarded pursuant to Count I and entry of a permanent injunction.

**E.     Costs Should Be Awarded.**

Chanel also requests this Court award costs in the total amount of $700.00 consisting of the filing fee ($350.00) and the process server fees ($350.00).  (See Kearns Decl. ¶¶ 8-9.)

14

IV.    **CONCLUSION**

For the foregoing reasons, Chanel respectfully requests that the Court:

(1)    Enter Final Default Judgment finding the Defendant liable on both Counts of the Complaint;

(2)    Enter a permanent injunction against the Defendant in the form filed herewith;

(3)    Enter an Order requiring the Subject Domain Names and the Additional Domain Names be cancelled or at Chanel's option, transferred to Chanel by the Defendant, Registries, and/or the Registrars, so the associated websites may no longer be used as a means of selling counterfeit and infringing goods using the Chanel Marks.

(4)    Enter an Order that, upon Chanel's request, the top level domain (TLD) Registry for each of the Subject Domain Names and the Additional Domain Names, within 30 days of receipt of this Order shall place the Subject Domain Names on Registry Hold status, thus removing them from the TLD zone files maintained by the Registry which link the Subject Domain Names and the Additional Domain Names to the IP address(es) where the associated websites are hosted;

(5)    Award Chanel $198,000.00 in statutory damages against the Defendant pursuant to 15 U.S.C. § 1117(c);

(6)    Award Chanel costs in the amount of $700.00 against the Defendant;

(7)    Award Chanel pre-judgment interest on the judgment amount;

Other and further relief as the Court may deem just and proper.

Dated:  January 6, 2011                     KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____/S/_____

ANNE E. KEARNS
Attorneys for Plaintiff Chanel, Inc.

15

**SCHEDULE "A"**
**SUBJECT DOMAIN NAMES**

1.    360gome.com
2.    atthego.com
3.    bagsagent.com
4.    belovebags.com
5.    belovewrist.com
6.    leaderol.com
7.    officalugg.com
8.    runtimberland.com
9.    shopkiss.com
10.   timberlander.com
11.   timberlandsou.com
12.   watchesagent.com

16

## SCHEDULE "B"
## ADDITIONAL DOMAIN NAMES

1. 09handbags.com
2. 2youwatch.com
3. 4ezlive.com
4. 80trade.com
5. 8bags4you.com
6. 9keyshow.com
7. abercrombiepop.com
8. abercrombiesales.com
9. abercrombiestar.com
10. allbestdvd.com
11. andany.com
12. anhandbag.com
13. asapshops.com
14. bagsagent.co.uk
15. bagslike.com
16. bagsontheway.com
17. bagsshow.biz
18. bagsvip.com
19. bapeshopping.com
20. basemall.info
21. belovewatch.com
22. bestemplet.com
23. bestsheshox.com
24. bikinionlineshop.com
25. bikinismark.com
26. bikiniszone.com
27. bosebuynow.com
28. brandsupplieronline.com
29. buddytrade.com
30. buyonebag.com
31. bytshirt.com
32. cartggo.com
33. clortsblog.org
34. clothinggogo.com
35. cooltimberland.com
36. dearbridal.com
37. dearmobiles.com
38. dearpolo.com
39. dearsunglass.com
40. dvdlift.com
41. dvdsheaven.com
42. dvdspop.com
43. dvdsword.com

44. easydoing.org
45. ecabroad.com
46. ecbape.com
47. ecgohere.com
48. ecgoshop.com
49. ecsalesonline.com
50. ecsharings.com
51. ecshopking.com
52. ecspeed.com
53. ed-hardys.com
54. edhardyshow.com
55. elegantsale.com
56. enjoyalley.com
57. e-superbuyer.com
58. fallowtrade.org
59. fangpin.net
60. fangpinb2b.com
61. fashionwatches4sales.com
62. feelmoving.com
63. firsttidebags.com
64. flat-ironchi.com
65. gahoos.com
66. globalprada.com
67. godshopking.com
68. godshops.com
69. golinksoflondon.com
70. gototbl.com
71. gsshring.com
72. hellorolex.com
73. hotandpop.com
74. hotsalex.com
75. ilikebuy.com
76. imitatewatch.com
77. imitatewatches.com
78. inexquisite.com
79. inthego.org
80. ireplicachoice.com
81. ispv.net
82. jeanecb.com
83. justforbag.com
84. kicksbap.com
85. kicksboots.com
86. kissbusy.com

17

| | | | | |
|---|---|---|---|---|
| 87. | londonlinksinc.com | | 126. | populashow.com |
| 88. | lovegymshoes.com | | 127. | progiftstore.com |
| 89. | luxuryinbags.com | | 128. | realafestate.com |
| 90. | macygood.com | | 129. | replica-lv.com |
| 91. | maxshoesworld.com | | 130. | robbtrade.com |
| 92. | mazillas.com | | 131. | selingbags.com |
| 93. | meishucheng.com | | 132. | selinged.com |
| 94. | mixitems.com | | 133. | sellelec.com |
| 95. | mybagcollect.com | | 134. | sexyhygeia.com |
| 96. | mydvddvds.com | | 135. | shixy.com |
| 97. | mygoodwatches.com | | 136. | shoppingyouself.com |
| 98. | mylovinearphone.com | | 137. | software4cpu.com |
| 99. | mylovintech.com | | 138. | softwareonthisway.com |
| 100. | myoxette.com | | 139. | storereplica.com |
| 101. | mysoftware123.com | | 140. | stylesheet.me |
| 102. | mysterybuying.com | | 141. | sunglasses-hut.com |
| 103. | mywatchestore.com | | 142. | thehandbagssale.com |
| 104. | netabercrombie.com | | 143. | thelinksuk.com |
| 105. | njlp.net | | 144. | themydvd.com |
| 106. | nokiasphone.com | | 145. | thewebdvd.com |
| 107. | officalsell.com | | 146. | timhightop.com |
| 108. | okeyby.com | | 147. | topairmax.com |
| 109. | ok-replica.com | | 148. | topofbikini.com |
| 110. | olugg.com | | 149. | treasurepub20.com |
| 111. | onairbuy.com | | 150. | uppetop.com |
| 112. | oncomes.com | | 151. | victor88.com |
| 113. | ondunk.com | | 152. | walletmarkets.com |
| 114. | onexquisite.com | | 153. | watch11.com |
| 115. | onlinenbastar.com | | 154. | watcheslike.com |
| 116. | order24hours.com | | 155. | watchesteam.com |
| 117. | order2you.com | | 156. | watchtoyou.com |
| 118. | ordernokia.com | | 157. | web3gtimes.com |
| 119. | outputbag.com | | 158. | webfashionsite.com |
| 120. | passsale.com | | 159. | webgoshop.com |
| 121. | pearltop.com | | 160. | webmydvd.com |
| 122. | plubrands.com | | 161. | wholesale-retailer.com |
| 123. | popdksb.com | | 162. | wristwatchnew.com |
| 124. | poportop.com | | 163. | wwbagss.com |
| 125. | poppolo4you.com | | 164. | youmestore.com |