KENNETH E. KELLER (SBN 71450) kkeller@kksrr.com
ANNE E. KEARNS (SBN: 183336) akearns@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone:     (415) 249-8330
Facsimile:     (415) 249-8333

Attorneys for Plaintiff Chanel, Inc.


THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| CHANEL, INC.,<br>a New York corporation,<br><br>          Plaintiff,<br><br>v.<br><br>US880, a business entity of unknown<br>makeup, and DOES 1-10,<br><br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:10-cv-02601-PJH (EMC)<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**<br><br>[Filed concurrently with the Declarations of Anne E. Kearns and Stephen M. Gaffigan]<br><br>Dept:    Courtroom 3, 3rd Floor<br>Judge:  Hon. Edward M. Chen |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    CHANEL IS ENTITLED TO JUDGMENT AGAINST DEFENDANT ............................... 2

     A.    Defendant is the Owner and Operator of the Subject Domain Names. .................... 2

III.   THE RELIEF REQUEST IS APPROPRIATE ..................................................... 5

     A.    Defendant Had Actual Notice of All the Goods at Issue in Chanel's
         Motion. .................................................................................................... 5

     B.    Chanel's Statutory Damages Request is Reasonable. ................................... 8

     C.    Chanel's Equitable Relief is Appropriate. .............................................. 10

IV.   CONCLUSION .................................................................................................... 11

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

Cartier v. Symbolix, Inc.,
   544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008) ................................................................ 8

Chanel, Inc. v. Tshimanga,
   Case No. 3:07-cv-03592-EMC, slip. op. 40 (N.D. Cal. July 15, 2008) ....................... 9

Gucci America, Inc. v. Myreplicahandbag.com,
   2008 WL 512789 (S.D.N.Y.) ...................................................................................... 9

Gucci America, Inc. v. Wang Huoqing,
   Case No. 3:09-cv-05969-JCS, 2011 WL 31191 (N.D. Cal. Jan. 3, 2011) ................. 8, 9

Louis Vuitton Malletier, S.A. v. Joseph Mosseri,
   2009 WL 3633882 (D.N.J.) ........................................................................................ 9

Silge v. Merz,
   510 F.3d 157 (2d Cir. 2007) ....................................................................................... 7

Truong Giang Corp. v. Twinstar Tea Corp.,
   Case No. CV 05-3545-PHX-EHC, 2008 WL 5068977, at *2 (D. Ariz. Nov. 25, 2008) ............... 7

**Statutes**

15 U.S.C. § 1117(c) .......................................................................................... 8, 9, 10
15 U.S.C. §1117(c)(2) ............................................................................................... 8

**Rules**

Federal Rule of Civil Procedure Rule 54(c) ..................................................................... 7

On January 6, 2011, Plaintiff Chanel, Inc. ("Chanel") filed its Motion for Entry of Final Default Judgment against the Defendant together with its accompanying Memorandum of Law, and served the same upon Defendant on January 11, 2011.  On March 16, 2011, this Court entered an Order requiring Chanel to submit a supplemental brief addressing certain areas of inquiry.  In compliance with the Court's Order, Chanel submits the following memorandum:

## I.   **INTRODUCTION**

Chanel initiated this action against Defendant US880, a business association of unknown makeup ("Defendant") d/b/a the Internet websites operating under the domain names listed on Schedule "A" annexed hereto (collectively the "Subject Domain Names") through the filing of a Complaint on June 11, 2010, seeking a permanent injunction and damages stemming from the Defendant's trademark infringement and counterfeiting (Count I) and false designation of origin (Count II).  A Clerk's Default was entered against the Defendant on October 19, 2010.  (e-docket 15.)

Chanel filed its Motion for Final Default Judgment ("Chanel's Motion") against Defendant on January 6, 2011, and on March 16, 2011, the Court held a hearing on Chanel's Motion.  Upon consideration of Chanel's Motion, the Court expressed concern regarding several issues relating to Plaintiff's evidence and requested relief.  Consequently, the Court issued an Order requiring Chanel to provide supplemental briefing and evidence with respect to (1) Defendant's relationship with the businesses operating under the Subject Domain Names; (2) the inclusion of three (3) goods not expressly identified in Chanel's Complaint that were alleged to be infringed in Chanel's Motion; (3) Chanel's requested statutory damages award, including the basis for Chanel's suggestion that the Court start with the statutory minimum award of $3,000.00 per registered Chanel Mark counterfeited (11) per type of goods sold (6 – handbags, wallets, watches, sunglasses, scarves, and swimwear), for a total award of amount $198,000.00 in statutory damages; and (4) the equitable relief Chanel requested in the form of placing the Subject Domain Names on Registry Hold status for the life of the current registration.  Chanel's responses to the Court's four areas of inquiry are set forth in order below.

1

## II.   CHANEL IS ENTITLED TO JUDGMENT AGAINST DEFENDANT

### A.   Defendant is the Owner and Operator of the Subject Domain Names.

As alleged by Chanel, admitted by default, and established by the evidence submitted herewith and in support of Chanel's Motion, the Defendant is the owner and operator of the fully interactive commercial Internet websites operating under the Subject Domain Names, and thus is the active, conscious, and dominant force behind the sale of handbags, wallets, watches, sunglasses, scarves, swimwear, and other goods bearing trademarks which are exact copies of the Chanel Marks (the "Counterfeit Goods").  (Compl. ¶¶ 4-9.  See Supplemental Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion for Final Default Judgment ("Gaffigan Suppl. Decl.") ¶¶ 10-11.  See also Declaration of Adrienne Hahn Sisbarro in Support of Chanel's Motion for Entry of Final Default Judgment Against Defendant ["Hahn Decl."] ¶¶ 10-11, e-docket 21; Declaration of Stephen M. Gaffigan in Support of Chanel's Motion for Entry of Final Default Judgment Against Defendant ["Gaffigan Decl."] ¶¶ 3-5, e-docket 22; Declaration of Jason Holmes in Support of Chanel's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) ["Holmes Decl. in Support of Mot. for Alt. Serv."] ¶ 4 and Comp. Ex. 1 thereto, e-docket 11-2.  See generally relevant web pages from Defendant's Internet websites operating under the Subject Domain Names attached as Composite Exhibit "1" to the Gaffigan Suppl. Decl. [collectively "the Defendant's Websites"].)

Chanel received information that Defendant was counterfeiting and infringing the Chanel's trademarks by using the fully interactive commercial Internet websites operating under the Subject Domain Names.  (Gaffigan Suppl. Decl. ¶¶ 6-7 and Comp. Ex. 1 attached thereto.)  On Plaintiff's behalf, Plaintiff's counsel analyzed and documented Defendant's sale of products bearing counterfeits of Chanel's trademarks and infringing upon Chanel's rights.  (Gaffigan Suppl. Decl. ¶ 8.)  Using various analytical tools to evaluate the data and investigative information provided in connection with the Defendant's Internet websites operating under the Subject Domain Names, Plaintiff's counsel was able to determine Defendant to be the controller and operator the Internet websites existing under the Subject Domain Names and that all of the Internet websites existing

2

under the Subject Domain Names are connected to each other.  (Gaffigan Suppl. Decl. ¶ 9.)  The definition of the Subject Domain Names as a cohesive group as well as their connection to the Defendant is based on six metrics: (a) email addresses used; (b) tracking codes; (c) website redirection; (d) linking between the websites; (e) names, physical addresses, and telephone numbers provided on the websites and/or provided as part of the WHOIS domain name registration reports; and (f) self identifications.  (Gaffigan Suppl. Decl. ¶¶ 9-10 and Exhibit 2 thereto.)  An explanation of the six metrics is detailed in the Supplemental Declaration of Stephen M. Gaffigan metrics, conclusively demonstrating common control, operation, and ownership of the Subject Domain Names.  A summary of these connections is outlined below.

### a.   Identical Email Addresses

Identical email addresses, either provided to the domain registrar or provided to customers of an Internet website, are strongly indicative of common ownership and control.  As a practical matter, the operator of a domain name, and the website operating thereunder, relies on email addresses to communicate with its registrars regarding issues related to the purchase, transfer, and maintenance of its account.  Moreover, it is necessary for merchants, such as the Defendant, who operate entirely online, to provide customers with accurate email addresses by which customers can contact the merchant to ask questions about the merchant's products, place orders from the merchant's Internet websites, and receive information from the merchant regarding the shipment of an order.  (Gaffigan Suppl. Decl. ¶ 10a and Comp. Ex. 2 thereto, p. 5-82.)

### b.   Identical Tracking Codes

A tracking code is inserted by a domain owner into a website's HTML code in order to allow the site operator to collect statistics about the visitors to their website.  In order to differentiate between traffic on different sites, tracking code providers generate unique codes for each user.  These are not intended to be used across multiple domain names, but sometimes are.  In these cases, when identical codes are used on multiple websites, all the tracking information from each website the code appears on goes to a single tracking account, indicating a common owner.  (Gaffigan Suppl. Decl. ¶ 10b and Comp. Ex. 2 thereto, p. 84-110.)

3

### c.  Website Redirection

A website redirect is when a server immediately moves and/or redirects visitors attempting to visit one site to another site instead.  For example, if a merchant wanted to move its online store from one domain name to another, the merchant can simply set up a domain name redirect to immediately move any customers attempting to access the old domain name (i.e., the former online store) to the new one.  As domain name redirects are exclusively used when an individual is moving a site from one domain name they own to another domain name they own, it is considered a strong connection metric.  This presumption that an operator will own both the original domain name and the domain name it is seeking to redirect is so strong that Google Webmaster Tools requires one to demonstrate their ownership of both domains before allowing a redirection to be registered between them.  (Gaffigan Suppl. Decl. ¶ 10c.)

### d.  Linking Between Websites

Links out from websites, where on one website, there is a link to a second website, provide additional indicia of a strong connection, especially when one e-commerce website links to another selling the same type of products.  As a practical matter, an online merchant will not divert a possible sale to another Internet website, unless it is irrelevant on which Internet website the sale is processed, as the merchant receives payment from both.  (Gaffigan Suppl. Decl. ¶ 10d and Comp. Ex. 2 thereto, p. 112-24.)

### e.  Common Contact Information

Identical or similar name, physical address, and telephone information provided on two or more websites adds additional support to the determination that the websites are controlled and/or operated by the same individual or entity.  The name, physical address, and telephone contact information is usually secondary to the email address information provided since the e-merchant's transactions are typically conducted exclusively online.  (Gaffigan Suppl. Decl. ¶ 10e and Comp. Ex. 2 thereto, p. 5-34, 126-29.)

### f.  Self-identifications

Self-identifications, how websites themselves, identify a merchant's e-business on the sites,

4

and are a very useful indicator of common control connections between websites.  Sometimes, the common branding of multiple domain names by the owner/operator of the domain names may be intentional, as the merchant desires to create a connection in the minds of customers between the websites and to encourage customers to visit multiple sites.  Another explanation for this is the rushed reuse of a copy from a previously operated site, which was not carefully edited to remove all references to its previous incarnation. (Gaffigan Suppl. Decl. ¶ 9f and Comp. Ex. 2 thereto, p. 131-32.)

### III.   THE RELIEF REQUEST IS APPROPRIATE

#### A.   Defendant Had Actual Notice of All the Goods at Issue in Chanel's Motion.

At the timing of filing of Chanel's Complaint, Chanel had knowledge the Defendant was selling, at least, handbags, wallets, and watches.  (See Compl. ¶ 10.)  Chanel later discovered the Defendant had expanded its counterfeiting and infringement to include sunglasses, scarves, and swimwear, in additional to handbags, wallets, and watches.   (Gaffigan Suppl. Decl. ¶ 7.) Accordingly, Plaintiff requested the Court award damages against the Defendant based on its sale of six (6) types of goods bearing counterfeits of Plaintiff's marks.

At the time Chanel filed its Complaint in this matter, it made two types of allegations regarding the websites operating under the Subject Domain Names used by the Defendant in connection with its counterfeiting scheme and the types of goods sold thereon.  First, Chanel alleged the Defendant was operating website businesses under fifteen (15) domain names known to Chanel. (Compl. ¶ 4 and Schedule A annexed thereto, e-docket 1.)  Second, Chanel alleged the Defendant was operating additional websites under domain names not then known to Chanel. (Compl. ¶¶ 3, 8-9.)  Chanel further alleged the Defendant's known and unknown domain names were essential components of the Defendant's counterfeiting and infringing activities and that all of the domain names, known and unknown, which the Defendant was operating for the purpose of selling counterfeit Chanel branded goods were the means by which the Defendant furthered its counterfeiting scheme and caused harm to Chanel.  (See id. at ¶ 8.)  Based on its investigation, Chanel alleged that "Defendants [were] promoting and otherwise advertising, distributing, selling

5

and/or offering for sale counterfeit products, including *at least* handbags, wallets and watches, using trademarks which are exact copies of the Chanel Marks (the "Counterfeit Goods")."  (Compl. ¶ 18 (emphasis added).)  Moreover, in the Prayer for Relief clause of the Complaint, Chanel expressly sought entry of a permanent injunction enjoining Defendant from infringing upon Chanel's trademark rights by manufacturing, importing, advertising or promoting, distributing, selling or offering to sell Defendant's Counterfeit Goods, "including, *without limitation*, handbags, wallets and watches."  (Compl. ¶ 43a (emphasis added).)  Defendant was served with the summons and complaint by electronic mail on September 20, 2010, pursuant to the Court's order authorizing email service.  (e-dockets 12, 13.  See also Supplemental Declaration of Anne E. Kearns in Support of Plaintiff's Motion for Entry of Final Default Judgment ["Kearns Suppl. Decl."] ¶ 3 and Exhibit 1 thereto.)

After filing the Complaint in this matter, and despite having actual notice of this suit against it, Chanel received information the Defendant was also counterfeiting and infringing Chanel's trademarks by using additional Internet websites operating under the domain names identified on Schedule "B" to the Supplemental Declaration of Stephen M. Gaffigan.  (Gaffigan Suppl. Decl. ¶ 7.) Moreover, Chanel discovered the Defendant had expanded its counterfeiting and infringement to include sunglasses, scarves, and swimwear.  As such, those domain names and additional goods were included in Chanel's Motion.  On January 6, 2011, Chanel filed its Motion for Final Default Judgment Against Defendant ("Chanel's Motion") and Memorandum in Support Thereof.  (e-docket 19.  See also Kearns Suppl. Decl. ¶ 4.)  Defendant was also served with Chanel's Motion, together with Chanel's Memorandum in Support Thereof and accompanying Declarations and Exhibits on January 11, 2011, expressly notifying Defendant of Chanel's additional allegations of the counterfeit goods at issue.  (e-docket 25.  See also Kearns Suppl. Decl. ¶ 4.)

The foregoing allegations and demands put the Defendant on notice that Chanel was seeking judgment with respect to all domain names used by the Defendant in connection with its counterfeiting scheme.  Indeed, granting Chanel's requested relief with respect to the domain names which were unknown at the time the Complaint was filed, but which were later identified and

6

1   included in the Motion for Final Default Judgment, falls squarely within Federal Rule of Civil

2   Procedure Rule 54(c).

3          Rule 54(c) provides in pertinent part, as follows:

4          "A default judgment must not differ in kind from, or exceed in amount, what is demanded in

5          the pleadings."

6          Fed. R. Civ. P. 54(c).  It has been repeatedly noted that the purpose of Rule 54(c) is to give

7   the defendant reasonable notice of what is at stake in a litigation so the defendant can "decide on the

8   basis of the relief requested in the original pleading whether to expend the time, effort, and money

9   necessary to defend the action."  See Silge v. Merz, 510 F.3d 157 (2d Cir. 2007).  See also Truong

10  Giang Corp. v. Twinstar Tea Corp., Case No. CV 05-3545-PHX-EHC, 2008 WL 5068977, at *2 (D.

11  Ariz. Nov. 25, 2008).  Chanel respectfully submits the stated allegations of the Complaint and the

12  corresponding demands for judgment fall squarely within the confines and purpose of Rule 54(c).

13         Ultimately, Chanel's Complaint expressly informed the Defendant that (1) Chanel was aware

14  the Defendant was operating additional websites under domain names not then known to Chanel; (2)

15  Chanel was aware the Defendant was promoting and otherwise advertising, distributing, selling

16  and/or offering for sale counterfeit products, including at least handbags, wallets and watches, as

17  well as others goods not then known to Chanel; and (3) Chanel was seeking equitable relief and a

18  monetary award based on those unknown domain names and the goods sold there under.  Chanel's

19  Complaint did not identify all of the goods at issue by name, because that information was

20  unavailable to Chanel.  After filing the Complaint in this matter, Chanel received information that

21  the Defendant was also counterfeiting and infringing the Chanel's trademarks by using additional

22  Internet websites.  (Gaffigan Suppl. Decl. ¶ 6.)  The websites included the advertisement and offer

23  for sale of products bearing the Chanel Marks that were not yet known to Chanel and/or wrongfully

24  use the Chanel Marks to promote the Defendant's counterfeit goods.  However, based upon service

25  of Chanel's Complaint upon Defendant, Defendant was clearly on notice that additional goods were

26  at issue in the litigation in terms of both monetary damages and equitable relief.  Furthermore, based

27  upon service of Chanel's Motion upon Defendant, Defendant was clearly on notice of the specific

28

7

types of goods at issue, including the additional goods alleged in Chanel's Motion.   More importantly, Defendant could be the only one to have notice of the goods at issue because Defendant is in control of its inventory and is the sole possessor of that information.   Nevertheless, the Defendant chose to default.   To prohibit Chanel from proving Defendant's liability for some goods and websites which were identified by Chanel post-filing would be to reward the Defendant for its default and thwarting of discovery.

**B.   Chanel's Statutory Damages Request is Reasonable.**

As a result of the Defendant's failure to participate in these proceedings, Chanel is unable to conduct the discovery necessary to determine the amount of Defendant's actual sales of counterfeit Chanel branded merchandise and the profits resulting therefrom.   Accordingly, Chanel is seeking statutory damages as provided in 15 U.S.C. § 1117(c).   Pursuant to that subsection, this Court may assess statutory damages against the Defendant in an amount "not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of goods or services sold, offered for sale or distributed as the court considers just.   In a case of willful infringement, the upper limit of the statutory damage range may be raised to not more than $2,000,000.00 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the court considers just."   15 U.S.C. §1117(c)(2). The statute offers no guidance regarding how a court should arrive at an appropriate statutory damage award, and courts throughout the country have employed a multitude of different methods to arrive at just awards.[1]

---

[1] Many published decisions discussing an appropriate statutory damage award under the Lanham Act instruct that a court may look to factors considered in connection with an award of statutory damages under an analogous provision of the Copyright Act, to wit:  (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyrights; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to access the value of the infringing material produced; and (7) the potential for discouraging the defendant.  *See e.g.* Gucci America, Inc. v. Wang Huoqing, Case No. 3:09-cv-05969-JCS, 2011 WL 31191, at *15-16 (N.D. Cal. Jan. 3, 2011); Cartier v. Symbolix, Inc., 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008). However, in a default case such as this, the bulk of those factors cannot be properly evaluated by the Court due to Defendant's refusal to participate in discovery.

8

Although 1117(c) uses the phrase "per mark per type of goods," that phrase is merely used to set a floor and ceiling for a statutory damage award.   As long as the ultimate award falls within that range, the Court is not constrained to use any particular method of calculation.   Nevertheless, the majority of courts which have entered statutory damage awards have arrived at the ultimate figure through some multiplication formula involving the number of trademarks counterfeited by the number of types of accused goods at issue.   Although most courts rely upon some type of mark by goods multiplication, courts have varied in their approach.

One widely used multiplication approach is that which was used by Chanel in the present mater, in which the total number of counterfeited marks is multiplied by the total number of goods sold.   See, e.g., Gucci America, Inc. v. Myreplicahandbag.com, 2008 WL 512789 (S.D.N.Y.) ($100,000.00 x 6 marks x 6 types of goods for a total award of $3,600,000.00); Louis Vuitton Malletier, S.A. v. Joseph Mosseri, 2009 WL 3633882 (D.N.J.) (multiplying $25,141.31 base award by 27 trademarks by 6 types of goods counterfeited resulting in award of $4,072,892.22).   In neither case was there an analysis conducted to determine if each mark appeared on each type of goods.

In the same vein, in Chanel, Inc. v. Tshimanga, this Court determined statutory damages by reducing the number of trademarks counted based upon their similarity, multiplying the reduced number of trademarks by the total number of goods, and then multiplying that product by the Court's recommendation of $75,000.00 per violation.   Chanel, Inc. v. Tshimanga, Case No. 3:07-cv-03592-EMC, slip. op. 40 at *21-22 (N.D. Cal. July 15, 2008).   Although the Court raised the issue of whether each mark appeared on each type of goods, the Court's final analysis ultimately multiplied the reduced number of Plaintiff's trademarks by all of the types of goods sold by the Defendant, and imposed a $75,000.00 award per violation, totaling $450,000.00 in statutory damages pursuant to 15 U.S.C. § 1117(c).   See id.   A similar approach was used by the Honorable Joseph C. Spero in Gucci America, Inc. v. Wang Huoqing, where he similarly multiplied a reduced number of trademarks by the total number of goods, without regard to whether each mark appeared on each type of goods. Gucci America, Inc. v. Wang Huoqing, Case No. 3:09-cv-05969-JCS, 2011 WL 31191, at *17 (N.D. Cal. Jan. 3, 2011).

9

For the Court's convenience, Plaintiff's counsel prepared a supplemental comparison summary table based upon the Court's previous methodology of reducing the number of marks, multiplying the total number of goods, and multiplying the product by an increased base amount. (See Gaffigan Suppl. Decl. ¶ 11 and Comp. Ex. 3 thereto.)  The supplemental comparison summary table provides citation to evidence comparing Chanel's trademark Registrations with evidentiary citation demonstrating specific examples of the Defendant's infringement of each Registered Chanel Mark and each good at issue.  (See Gaffigan Suppl. Decl. ¶ 11 and Comp. Ex. 3 thereto.)  As such, the supplemental comparison summary table identifies the individual trademarks at issue, taking into account the similarity between Plaintiff's Marks, and provides specific examples of the types of goods at issue.   Using this methodology, the result would be three (3) registered trademarks multiplied by six (6) types of goods, resulting in a statutory damage award of $1,350,000.00 if the Court's previously suggested $75,000.00 base award amount is used.[2]  This is a variant of the method Chanel proposed in its initial Memorandum and Chanel agrees that the alternative interpretation of the statutory language and the resulting methodology is also reasonable. Accordingly, if this Court disagrees with Chanel's interpretation of §1117(c) as set forth in Chanel's initial Memorandum, Chanel requests the Court use the proposed method of calculation and damages amount set forth herein.

**C.    Chanel's Equitable Relief is Appropriate.**

With respect to Paragraph (2)(m) of Chanel's Proposed Final Judgment, the requested relief is necessary if any of the domain names at issue are to be disabled.  The domain names at issue in this case use the .com, .net, .biz, .info, .org, .me, and .co.uk Top Level Domain ("TLD").  VeriSign Global Registries, Inc. is the Registry operator for all of the .com and .net TLD domain names; NeuStar, Inc. is the Registry operator for the .biz TLD domain name; Afilias Limited is the Registry operator for the .info TLD domain name; Public Interest Registry is the Registry operator for all of the .org TLD domain names; .ME Registry is the is the Registry operator for the .me TLD domain

---

[2] This calculation is based upon Composite Exhibit 3 attached to Gaffigan Suppl. Decl., demonstrating specific examples of the types of goods at issue per Registered Chanel Mark at issue.

10

name; and lastly, Nominet is the is the Registry operator for the .co.uk TLD domain name (collectively the "Registry Operators").  The Registry Operators maintain control of the zone files which link each of the domain names at issue to the I.P. (Internet Protocol) addresses where the associated websites are hosted.  Each Registry Operator is in the unique position to be able to disable the domain names and associated websites.  However, if the Court orders the transfer of the domain names to the Plaintiff as described in Paragraph (2)(l) of the Proposed Final Judgment, then Paragraph (2)(m) of the Proposed Final Judgment will be superfluous, because Plaintiff will have the ability to disable the Subject Domain Names itself.

IV.      **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defendant in the form of the proposed Final Default Judgment and Permanent Injunction submitted with Plaintiff's Motion for Entry of Final Default Judgment.

Dated:  March 30, 2011                          KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____/S/_____

ANNE E. KEARNS
Attorneys for Plaintiff Chanel, Inc.

11

**SCHEDULE "A"**
**SUBJECT DOMAIN NAMES**

| | | | |
|---|---|---|---|
| 1. | 360gome.com | 43. | bytshirt.com |
| 2. | atthego.com | 44. | cartggo.com |
| 3. | bagsagent.com | 45. | clortsblog.org |
| 4. | belovebags.com | 46. | clothinggogo.com |
| 5. | belovewrist.com | 47. | cooltimberland.com |
| 6. | leaderol.com | 48. | dearbridal.com |
| 7. | officalugg.com | 49. | dearmobiles.com |
| 8. | runtimberland.com | 50. | dearpolo.com |
| 9. | shopkiss.com | 51. | dearsunglass.com |
| 10. | timberlander.com | 52. | dvdlift.com |
| 11. | timberlandsou.com | 53. | dvdsheaven.com |
| 12. | watchesagent.com | 54. | dvdspop.com |
| | | 55. | dvdsword.com |
| 13. | 09handbags.com | 56. | easydoing.org |
| 14. | 2youwatch.com | 57. | ecabroad.com |
| 15. | 4ezlive.com | 58. | ecbape.com |
| 16. | 80trade.com | 59. | ecgohere.com |
| 17. | 8bags4you.com | 60. | ecgoshop.com |
| 18. | 9keyshow.com | 61. | ecsalesonline.com |
| 19. | abercrombiepop.com | 62. | ecsharings.com |
| 20. | abercrombiesales.com | 63. | ecshopking.com |
| 21. | abercrombiestar.com | 64. | ecspeed.com |
| 22. | allbestdvd.com | 65. | ed-hardys.com |
| 23. | andany.com | 66. | edhardyshow.com |
| 24. | anhandbag.com | 67. | elegantsale.com |
| 25. | asapshops.com | 68. | enjoyalley.com |
| 26. | bagsagent.co.uk | 69. | e-superbuyer.com |
| 27. | bagslike.com | 70. | fallowtrade.org |
| 28. | bagsontheway.com | 71. | fangpin.net |
| 29. | bagsshow.biz | 72. | fangpinb2b.com |
| 30. | bagsvip.com | 73. | fashionwatches4sales.com |
| 31. | bapeshopping.com | 74. | feelmoving.com |
| 32. | basemall.info | 75. | firsttidebags.com |
| 33. | belovewatch.com | 76. | flat-ironchi.com |
| 34. | bestemplet.com | 77. | gahoos.com |
| 35. | bestsheshox.com | 78. | globalprada.com |
| 36. | bikinionlineshop.com | 79. | godshopking.com |
| 37. | bikinismark.com | 80. | godshops.com |
| 38. | bikiniszone.com | 81. | golinksoflondon.com |
| 39. | bosebuynow.com | 82. | gototbl.com |
| 40. | brandsupplieronline.com | 83. | gsshring.com |
| 41. | buddytrade.com | 84. | hellorolex.com |
| 42. | buyonebag.com | 85. | hotandpop.com |

12

86. hotsalex.com
87. ilikebuy.com
88. imitatewatch.com
89. imitatewatches.com
90. inexquisite.com
91. inthego.org
92. ireplicachoice.com
93. ispv.net
94. jeanecb.com
95. justforbag.com
96. kicksbap.com
97. kicksboots.com
98. kissbusy.com
99. londonlinksinc.com
100. lovegymshoes.com
101. luxuryinbags.com
102. macygood.com
103. maxshoesworld.com
104. mazillas.com
105. meishucheng.com
106. mixitems.com
107. mybagcollect.com
108. mydvddvds.com
109. mygoodwatches.com
110. mylovinearphone.com
111. mylovintech.com
112. myoxette.com
113. mysoftware123.com
114. mysterybuying.com
115. mywatchestore.com
116. netabercrombie.com
117. njlp.net
118. nokiasphone.com
119. officalsell.com
120. okeyby.com
121. ok-replica.com
122. olugg.com
123. onairbuy.com
124. oncomes.com
125. ondunk.com
126. onexquisite.com
127. onlinenbastar.com
128. order24hours.com
129. order2you.com
130. ordernokia.com
131. outputbag.com

132. passsale.com
133. pearltop.com
134. plubrands.com
135. popdksb.com
136. poportop.com
137. poppolo4you.com
138. populashow.com
139. progiftstore.com
140. realafestate.com
141. replica-lv.com
142. robbtrade.com
143. selingbags.com
144. selinged.com
145. sellelec.com
146. sexyhygeia.com
147. shixy.com
148. shoppingyouself.com
149. software4cpu.com
150. softwareonthisway.com
151. storereplica.com
152. stylesheet.me
153. sunglasses-hut.com
154. thehandbagssale.com
155. thelinksuk.com
156. themydvd.com
157. thewebdvd.com
158. timhightop.com
159. topairmax.com
160. topofbikini.com
161. treasurepub20.com
162. uppetop.com
163. victor88.com
164. walletmarkets.com
165. watch11.com
166. watcheslike.com
167. watchesteam.com
168. watchtoyou.com
169. web3gtimes.com
170. webfashionsite.com
171. webgoshop.com
172. webmydvd.com
173. wholesale-retailer.com
174. wristwatchnew.com
175. wwbagss.com
176. youmestore.com

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR ENTRY OF
FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (EMC)