**United States District Court**
For the Northern District of California

1

2

3

4

5                              UNITED STATES DISTRICT COURT

6                            NORTHERN DISTRICT OF CALIFORNIA

7

8    CHANEL, INC.                                No. C-10-2601 PJH (EMC)

9                 Plaintiff,

10        v.                                     **ORDER RE SUPPLEMENTAL
                                                 BRIEFING AND/OR EVIDENCE RE
                                                 PLAINTIFF'S MOTION FOR DEFAULT**
11   US880, *et. al.*                            **JUDGMENT**

12               Defendants.                     **(Docket No. 19)**
     _____/

13

14

15

16        Pending before the Court is Plaintiff Chanel, Inc.'s Motion for Default Judgment against

17   Defendant US880, an entity of unknown makeup d/b/a/ various internet websites.  Having

18   considered Plaintiff's Motion and supporting papers, the Court finds invites supplemental briefing.

19        Chanel requests an award of $3,000.00 per registered Chanel Mark (totaling eleven marks)

20   per type of goods sold (totaling six – handbags, wallets, watches, sunglasses, scarves, and

21   swimwear) for a total award of $198,000 ($3,000 x 66 infringements).  Mot. at 13.  Plaintiff bases its

22   request on the statutory minimum ($1,000.00 per counterfeit mark per type of good sold) trebled to

23   reflect Defendant's willfulness.  Plaintiff alleges that Defendants have knowingly sold or offered for

24   sale goods bearing marks which are identical to the Chanel Marks with the intent to capitalize on the

25   reputation and goodwill of the marks, and Plaintiff has provided evidence of the infringement of its

26   marks.  *See* Gaffigan Decl. Ex. 3; Supp. Gaffigan Ex. 3.  Chanel's calculation methodology

27   (assessing a statutory penalty for each alleged infringement) appears to be reasonable.  *See Chanel,*

28   *Inc. v. Xiuyin Lin*, No. 09-4996, 2010 U.S. Dist. LEXIS 61205 (N.D. Cal., June 21, 2010) (awarding

**United States District Court**

For the Northern District of California

$456,000 in statutory damages for willful infringement of nineteen marks across eight categories of products); *Chanel, Inc. v. Doan*, 2007 U.S. Dist. LEXIS 22691, 2007 WL 781976, *6 (N.D. Cal. Mar. 13, 2007) (awarding $127,701 in statutory damages for willful infringement of six federally registered trademarks); *Adobe Systems Inc. v. Kern*, 2009 U.S. Dist. LEXIS 123566, 2009 WL 5218005, *9 (N.D. Cal. Nov. 24, 2009) (awarding $250,000 in statutory damages for willful infringement of five federally registered trademarks); *Adobe Systems, Inc. v. Taveira*, 2009 U.S. Dist. LEXIS 127751, 2009 WL 506861, *6 (N.D. Cal. Feb. 27, 2009) (awarding $250,000 in statutory damages for willful infringement of five federally registered trademarks).  Moreover, Plaintiff's request is well within the $2 Million "per each counterfeit Chanel mark used and product sold, as provided by 15 U.S.C. § 1117(c) . . . ."  Compl. ¶ 43c.  The Court nonetheless finds a shortcoming in Chanel's request.  There are two problems.

First, as this Court previously noted, the original infringement table attached to the Declaration of Gaffigan as Ex. 3, documents 16 examples of infringements.  Eight of the eleven registered marks are infringed by only one type of good (*e.g.* handbags); only three marks are infringed by more than one type of good.  Plaintiff failed to prove each of the eleven marks are infringed by each of six types of goods.  In Mr. Gaffigan's supplemental declaration, Ex. 3, the infringement table lists three marks but does not specify the type of good allegedly infringing (as he did in the first declaration).  While Mr. Gaffigan attaches printouts of offending websites, many of the printouts are not clear enough to identify the mark.  In any event, Plaintiff has still failed to prove 66 infringements.  *See generally Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (noting that while factual allegations of the complaint are generally taken as true after entry of default, damages must be proven); *Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-02841 CW, 2005 WL 443462 at *2 (N.D. Cal. Feb. 24, 2005) (explaining that, in moving for default judgment, "Plaintiff has the burden of proving damages through testimony or written affidavit.").

Second, many of the cited exemplars of particular infringements are websites which have not been sufficiently proven to be under the control and ownership of Defendant.  Plaintiff provides evidence that fourteen internet domains (the twelve "Subject Domain Names" listed in Schedule A

to the Supp. Gaffigan Decl. plus two of the "Additional Domain Names" listed in Schedule B) are

registered to Defendant US880. *See* Supp. Gaffigan Decl. ¶ 10e, Comp. Exs. 2a, 2e. The proof is

solid. The evidence tying Defendant to the remaining domain names listed in Schedule B, however,

is more attenuated. Plaintiff argues that Mr. Gaffigan has adequately established that Defendant is

the owner of each of these sites based on six criteria: "(1) email addresses; (2) tracking codes; (3)

website redirection; (4) linking between websites; (5) common contact information provided on the

websites and/or provided as part of the WHOIS domain name registration reports; and (6) self

identifications." Supp. Gaffigan Decl. ¶ 9. Only the fourteen sites (12 from Schedule A and 2 from

Schedule B) satisfy the fifth criterion (actual registration data) – the strongest criteria. *Id.* at ¶ 10e,

Comp Ex. 2. The Court therefore turns to a discussion of the remaining criteria used by Mr.

Gaffigan.

Plaintiff posits, and the Court agrees, that "[i]dentical email addresses, either provided to the

domain registrar or provided to customers of an Internet website, are strongly indicative of common

ownership and control." *Id*. ¶ 10a. Mr. Gaffigan's analysis assumes that online merchants must

provide accurate email addresses on their websites so their customers may ask questions and place

orders. *Id.* Absent any reason to suspect otherwise, the Court finds this to be a reasonable

assumption, and therefore concludes that sites providing an email address identical to one tied

directly to US880 are under Defendant's ownership or control. Mr. Gaffigan explains that the

contact email address for US880 contained in the WHOIS data registration records is

dreaming987@163.com. *Id.* Many of the "Additional Domain Names" are tied to Defendant via,

*inter alia*, common email addresses. Nearly all of those list a common email address of

dreaming987@163.com, which is reliably tied to Defendant. *See id.* Comp. Ex. 2. They also

appear, based on domain name registrations, to have other contact information in common with

US880, including their physical address, phone number, and the name US880. *Id.* at Ex. 2a.

However, seven are not so reliably tied by email addresses because the listed email address is not

that of US880, but those indirectly linked through other websites.

Plaintiff ties many websites to Defendant based on identical tracking codes found in the

websites' HTML code. Mr. Gaffigan explains that "[a] tracking code is inserted by a domain owner

3

United States District Court

For the Northern District of California

into a website's HTML code in order to allow the site operator to collect statistics about the visitors to their website. . . .  tracking code providers generate unique codes for each user . . . . [W]hen identical codes are used on multiple websites, all the tracking information from each website the code appears on goes to a single tracking account, indicating a common owner." *Id.* ¶ 10b. Tracking codes on sites within domains registered to US880 are also found in the HTML code of other sites. *See id.* (explaining, *e.g.*, that tracking code 51.1a:2988833 is found on multiple domains including edhardyshow.com); *see, e.g., id.* Ex. 2b at 59 (registrant contact information for edhardyshow.com).  The Court accordingly finds that damages should be awarded with respect to domains tied to Defendant via tracking codes.

Plaintiff's third criteria, "website redirection" is also satisfactory, provided the detour leads to a site reliably associated with Defendant.  "A website redirect occurs when a server immediately moves and/or directs visitors attempting to visit one website to a different website." *Id.* ¶ 10c.  Of the nine domains associated by redirection, seven of them lead to domains not tied to Defendant by virtue of registration data, tracking codes, or contact information (*e.g.*, email addresses).  One, topairmax.com, is adequately connected to Defendant based on Mr. Gaffigan's determination that it redirects to maxshoesworld.com, which is a domain tied to Defendant via 360gome.com (a domain registered to US880 and listed in Schedule A).  *See* Supp. Gaffigan Decl. Ex. 1 (Docket No. 38-5) at 3 (printout from www.360gome.com dated Sept. 14, 2010 advertising Chanel handbags), 170 (noting that the www.360gome.com now redirects to maxshoesworld.com), 180 (printout from www.maxshoesworld.com dated Dec. 21, 2010 advertising Chanel handbags).  Because the remaining seven domains are not adequately tied to Defendant by virtue of the website they automatically redirect to or any other reliable means, the Court finds that it would be inappropriate to consider them in its calculation of damages based on the record evidence.

Plaintiff's fourth criterion, links between websites, is more attenuated than automatic redirection.  According to Mr. Gaffigan "an online merchant will not divert a possible sale to another Internet website, unless it is irrelevant on which Internet website the sale is processed, as the merchant receives payment from both."  Supp. Gaffigan Decl. ¶ 10d.  But there are other reasons a merchant might link to another's website, such as where they receive a commission from a resulting

1    sale or click-through as part of a search engine optimization campaign.  The fact that these websites

2    sell "the same type of products" (not "identical" products), does not sufficiently prove common

3    ownership and control based solely on links between websites.

4        Plaintiff's final criterion, while less substantial than some other indicators, is sufficient.

5    Plaintiff contends that common "self-identifications," whether purposeful or unintentional, indicate

6    common control between websites.  *Id.* ¶ 10f.  Mr. Gaffigan points to an example from

7    www.dearsunglass.com, which states:  "The products we provide cover various aspects of fashion

8    article, so you may choose products according to brand or choose brand according to products you

9    like form watchesagent.com which is all-round shopping website."  Ex. 1 to Supp. Gaffigan Decl. at

10   132 (unedited).  According to Plaintiff, this is sufficient to establish that common ownership and

11   control of watchesagent.com and dearsunglass.com.  The Court is persuaded that these "self-

12   identifications" warrant the inference that Defendant is responsible for the four websites tied to it

13   solely by virtue of such text.

14        In total, the Court is satisfied that 73 of the 176 domains listed by Plaintiff are under the

15   Defendant's ownership or control.  The others listed on Schedule B are not.

16        Because the asserted domain names are relevant to the relief sought by Plaintiff herein – both

17   as exemplars for statutory damages as to particular infringements of certain marks and as to

18   equitable relief – Plaintiff must "prove up" the essential elements for relief.  *Televideo Sys., Inc.*,

19   *supra*, 826 F.2d at 917-18.  Based on the proof submitted, the Court finds the domains listed in

20   Appendix A, *infra*, adequately tied to Defendant such that they may form a basis for damages and

21   equitable relief.  The others (not listed) are not.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    However, the Court will permit Plaintiff to file a supplemental filing to enhance this list.

2    Plaintiff may also list substitute exemplars of alleged infringements based on those approved

3    domains listed in Appendix A in order to prove violations entitling it to statutory damages.  It may

4    also enhance its table of infringements to assert more than 16 infringements.  The supplemental

5    filing shall be made by April 27, 2011.

6

7        IT IS SO ORDERED.

8

9    Dated:  April 14, 2011

10

11                                          _____
                                         EDWARD M. CHEN

12                                         United States Magistrate Judge

**United States District Court**
For the Northern District of California

6

**United States District Court**
For the Northern District of California

**APPENDIX A**

360gome.com

atthego.com

bagsagent.com

belovebags.com

belovewrist.com

leaderol.com

officalugg.com

runtimberland.com

shopkiss.com

timberlander.com

timberlandsou.com

watchesagent.com

bagshow.biz

sexyhygeia.com

80trade.com

abercrombiesales.com

abercrombiestar.com

allbestdvd.com

bagsontheway.com

bapeshopping.com

basemall.info

hotsalex.com

ilikebuy.com

ireplicachoice.com

ispv.net

kicksbap.com

**United States District Court**
For the Northern District of California

1  kicksboots.com

2  mixitems.com

3  mysoftware123.com

4  onairbuy.com

5  order24hours.com

6  order2you.com

7  youmestore.com

8  topairmax.com

9  topofbikini.com

10  thehandbagssale.com

11  software4cpu.com

12  shixy.com

13  sellelec.com

14  selinged.com

15  robbtrade.com

16  progiftstore.com

17  pearltop.com

18  gsshring.com

19  gototbl.com

20  golinksoflondon.com

21  fangpinb2b.com

22  fangpin.net

23  fallowtrade.org

24  e-superbuyer.com

25  edhardyshow.com

26  ed-hardys.com

27  ecspeed.com

28  ecshopking.com

1   ecgoshop.com

2   ecgohere.com

3   ecbape.com

4   easydoing.org

5   dvdsword.com

6   dearpolo.com

7   dearmobiles.com

8   dearbridal.com

9   clortsblog.org

10   bikinismark.com

11   bikinionlineshop.com

12   webmydvd.com

13   victor88.com

14   selingbags.com

15   dearsunglass.com

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California