KENNETH E. KELLER (SBN 71450) kkeller@kksrr.com
ANNE E. KEARNS (SBN: 183336) akearns@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone:    (415) 249-8330
Facsimile:    (415) 249-8333

Attorneys for Plaintiff Chanel, Inc.

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL, INC., a New York corporation, | Case No. 4:10-cv-02601-PJH (JSC) |
| Plaintiff, | **PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT** |
| v. | |
| US880, a business entity of unknown makeup, and DOES 1-10, | [Filed concurrently with the Declarations of Stephen M. Gaffigan and Brandon Tanori] |
| Defendants. | Judge:   Hon. Jacqueline Scott Corley |

I. **INTRODUCTION**

Chanel initiated this action against Defendant US880, a business association of unknown makeup ("Defendant"), doing business as the Internet websites operating under the domain names listed on Schedules "A" and "B" annexed hereto (collectively the "Subject Domain Names") through the filing of a Complaint on June 11, 2010, seeking a permanent injunction and damages stemming from the Defendant's trademark infringement and counterfeiting (Count I) and false designation of origin (Count II). A Clerk's Default was entered against the Defendant on October 19, 2010. (e-docket 15.)

Chanel filed its Motion for Final Default Judgment ("Chanel's Motion") against Defendant on January 6, 2011, and on March 16, 2011, the Court held a hearing. Upon consideration of Chanel's Motion, the Court expressed concern regarding several issues relating to Plaintiff's evidence and associated requested relief, and entered an Order requiring Plaintiff to provide supplemental briefing and evidence supporting its request. Chanel filed its Supplemental Brief in Support of its Motion for Entry of Final Default Judgment against the Defendant ("Suppl. Brief in Support of Chanel's Motion") on March 30, 2011, together with its accompanying Memorandum of Law, and also served the same upon Defendant on that same day. Upon consideration of its Suppl. Brief in Support of Chanel's Motion, the Court was satisfied with Chanel's evidence establishing Defendant's ownership and control of the Internet websites operating under the domain names identified on Schedule "A" hereto (collectively the "Group I Subject Domain Names").[1] However, the Court expressed concern regarding Defendant's ownership or control of the one hundred and eight (108) domain names identified on Schedule "B" hereto (collectively the "Group II Subject Domain Names"). Consequently, on April 14, 2011, the Court entered an Order inviting Plaintiff to

---

[1] In the Court's April 14, 2011 Order, the Court stated that it was satisfied that 73 of the 176 domains listed by Plaintiff were adequately tied to Defendant, which were listed on Appendix A to the Court's Order. (e-docket 40 at p. 5.) However, the Court's Appendix A identified 69 domain names. Accordingly, Plaintiff's present Memorandum relates to the one-hundred and eight (108) domain names left pending before the Court.

2

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR
ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (JSC)

further provide supplemental briefing and evidence tying Defendant to the Group II Subject Domain Names. Chanel's response to the Court's inquiry is set forth below.

## II.     DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT

### A.     Defendant is the Owner and Operator of the Subject Domain Names.

In its April 14, 2011 Order, the Court agreed that common email addresses are strongly indicative of common ownership and control, and, thus, concluded that the "sites providing an email address identical to one tied directly to US880 are under Defendant's ownership and control." (e-docket 40 at p. 3.) Specifically, the contact email address, dreaming987@163.com is contained in the WHOIS data registration records of thirty-five (35) of the Subject Domain Names, which the Court found was sufficient to be reliably tied Defendant. (Id.)

The website operating under the domain name, ecspeed.com, is one such domain name registered using Defendant's dreaming987@163.com contact email address. (See, e.g., Composite Exhibit "1" attached to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's Second Supplemental Brief in Support of its Motion for Entry of Final Default Judgment ("Gaffigan Decl. in Support of Second Suppl. Brief"), filed herewith.) The ecspeed.com website purports to be an online marketplace, whereby a merchant can create an online store and sell products directly to interested buyers. (See, e.g., Gaffigan Decl. in Support of Second Suppl. Brief ¶ 3; Declaration of Brandon Tanori in Support of Plaintiff's Second Supplemental Brief in Support of its Motion for Entry of Final Default Judgment ("Tanori Decl. in Support of Second Suppl. Brief") ¶ 4, filed herewith, and Exhibit "1" thereto.) On ecspeed.com, Defendant advertises a three-step process purports to allow any person to create a customized "e-store," enabling the merchant to sell products online and receive a commission. (See id.)

However, ecspeed.com's appearance as a public online marketplace is likely only a façade. In reality, the Internet website operating under the domain name, ecspeed.com, appears to be used by Defendant as a common distribution platform for the sale of products bearing counterfeits and infringement of Chanel's trademarks. Chanel retained Brandon Tanori ("Tanori") of Investigative Consultants, a licensed private investigative firm, to investigate the suspected sale of counterfeit

3

Chanel branded products by Defendant. (Tanori Decl. in Support of Second Suppl. Brief ¶ 3, filed herewith.) On May 12, 2011, Tanori accessed the Internet website operated by Defendant, ecspeed.com, and attempted to create an online store that sells various products, including Chanel branded products. (Tanori Decl. in Support of Second Suppl. Brief ¶ 4 and Exhibit 1 thereto.) Following the registration process, Tanori was immediately directed to an electronic notice stating that the account he attempted to create was being reviewed and consequently, was unable to access the website, ecspeed.com, until the review process had been completed. (Id. at ¶ 5 and Exhibit 2 thereto.) On May 16, 2011, Tanori sent an e-mail to Defendant at annie@b2bsharing.com, one of the contact email addresses listed on the "Contact Us" section Defendant's ecspeed.com website, inquiring as to the status of the online store he attempted to establish on May 12, 2011. (Id. at ¶ 6 and Exhibit 3 thereto.) Tanori received no further response. (Id. at ¶ 6 and Exhibit 3 thereto.) Moreover, on May 23, 2011, Tanori sent an e-mail message to Defendant at dreaming987@163.com, the contact e-mail address provided in the contact section of the WHOIS registration record for the Subject Domain, ecspeed.com, again inquiring as to the status of the online store he attempted to establish on May 12, 2011. (Id. at ¶ 7 and Exhibit 4 thereto.) However, Tanori has yet to receive a response regarding the establishment of his online store via ecspeed.com. (Id.) Similarly, Chanel's counsel, Stephen M. Gaffigan ("Gaffigan"), also accessed ecspeed.com, and attempted to create an online store that sells various products, including Chanel branded products. (Gaffigan Decl. in Support of Second Suppl. Brief ¶ 3.) However, Gaffigan's attempt also proved futile, as he was likewise precluded from creating his online store. (Id.)

The evidence demonstrates that although Defendant's ecspeed.com website purportedly allows the public to create a customized online business, the Internet website operating under the domain name, ecspeed.com, is instead, a distribution platform used solely by Defendant to sell goods bearing counterfeits and infringements of Chanel's trademarks under various domain names. In other words, although ecspeed.com facially appears to function as a facilitator of turn key businesses, the website serves as a cloak to conceal its true purpose – to sell products bearing counterfeits and infringements of Chanel's trademarks through distinct, but interrelated, websites.

This is not an uncommon practice. In a virtually identical case in the Southern District of Florida, the defendant therein established a supposed third-party search engine under the Internet website operating under the domain name, searchreplica.com. <u>See</u> <u>Chanel, Inc. v. Zhu</u>, Case No. 0:10-cv-62489-JEM (S.D. Fla. March 8, 2011). The searchreplca.com website offered for sale and sold products bearing Chanel's trademarks through what appeared to be a variety of different websites. However, upon further investigation, it became apparent that all of the websites offering for sale and selling products via searchreplica.com were all interconnected and operated solely by the Defendant.

In this particular instance, ecspeed.com provides what it refers to as a "Store Directory," which contains a laundry list of e-commerce websites, together with corresponding active links to those other websites, thereby directing customers from Defendant's ecspeed.com website to another one of Defendant's many online businesses. (<u>See, e.g.</u>, Ex. 2 to the Gaffigan Decl. in Support of Second Suppl. Brief.) The fact that neither Tanori nor Gaffigan were able to establish online stores via ecspeed.com is a strong indicia that Defendant's ecspeed.com website does not function as an e-commerce marketplace, but rather as a distribution platform used by the Defendant to conduct its illegal infringing activities. In short, Defendant uses its Store Directory for its own commercial gain to divert consumers looking to purchase genuine Chanel branded goods to its illegal businesses, which offer consumers a variety of counterfeit branded goods, including Chanel branded goods.[2]

Even if the Court were to accept the ecspeed.com representation of itself as a creator of an online commerce mall, liability for each of the domain names at issue is still appropriate. Specifically, the Defendant is a joint tortfeasor engaged in the sale and offering for sale of Chanel branded goods bearing counterfeits of Chanel's trademarks. Ecspeed.com's "about sharing"

---

[2] This conclusion is further supported by ecspeed.com's website layout. Mr. Gaffigan accessed the Internet website operating under the domain name, zlio.com, a legitimate e-commerce marketplace, and downloaded a capture of zlio.com's "what is zlio?" webpage. A comparison of ecspeed.com's "about sharing" webpage with zlio.com's "what is zlio?" webpage reveals the ecspeed.com website was obviously intended to mirror zlio.com's appearance. Indeed, on ecspeed.com's "about sharing" webpage, it identifies itself as "ZLIO." (<u>Compare</u> p. 4 of Comp. Ex. 2 to the Gaffigan Decl. in Support of Second Suppl. Brief. <u>with</u> Ex. 3 to the Gaffigan Decl. in Support of Second Suppl. Brief.)

5

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR
ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (JSC)

webpage expressly states that the ecspeed.com website is responsible for "[p]ayment, product delivery and after-sale support" for merchants listed on its site. More importantly, the ecspeed.com website boasts that a commission can be earned for "each click generated" on its website. (See p. 4 of Comp. Ex. 2 to the Gaffigan Decl. in Support of Second Suppl. Brief.) Accordingly, at a minimum, Defendant is actively contributing to and participating in causing irreparable injury and damages to Chanel by supporting and supplying inventory to the websites operating on the ecspeed.com store directory.

The Court is satisfied that Defendant is the controller and operator of the Internet website operating under the domain name, ecspeed.com. As the ecspeed.com website promotes, advertises, directs customers to, supplies, and profits from the first seventy-six (76) domain names listed on the attached Schedule B for the purchase of counterfeit and infringing Chanel branded, Plaintiff submits that it is reasonable to conclude that these 76 websites are likewise under Defendant's ownership and control.[3]

---

[3] The following domain names appear on the Store Directory on the Internet website operating under the domain name, ecspeed.com: 09handbags.com, 2youwatch.com, 4ezlive.com, 8bags4you.com, abercrombiepop.com, asapshops.com, bagslike.com, bagsvip.com, belovewatch.com, bestemplet.com, bestsheshox.com, bikiniszone.com, bosebuynow.com, brandsupplieronline.com, buddytrade.com, buyonebag.com, cartggo.com, clothinggogo.com, dvdlift.com, dvdsheaven.com, dvdspop.com, ecabroad.com, ecsalesonline.com, ecsharings.com, enjoyalley.com, feelmoving.com, firsttidebags.com, flat-ironchi.com, gahoos.com, globalprada.com, godshopking.com, godshops.com, hotandpop.com, inexquisite.com, inthego.org, jeanecb.com, londonlinksinc.com, lovegymshoes.com, luxuryinbags.com, macygood.com, mazillas.com, meishucheng.com, mydvddvds.com, mygoodwatches.com, mylovinearphone.com, mylovintech.com, myoxette.com, mysterybuying.com, mywatchestore.com, netabercrombie.com, njlp.net, nokiasphone.com, officalsell.com, okeyby.com, oncomes.com, ondunk.com, onexquisite.com, onlinenbastar.com, ordernokia.com, passsale.com, plubrands.com, popdksb.com, poportop.com, poppolo4you.com, populashow.com, realafestate.com, shoppingyouself.com, thelinksuk.com, themydvd.com, thewebdvd.com, watch11.com, watchesteam.com, watchtoyou.com, webfashionsite.com, webgoshop.com, and wristwatchnew.com. (See Gaffigan Decl. in Support of Second Suppl. Brief ¶ 2 and Comp. Ex. 2 thereto.)

6

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR
ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (JSC)

**1.     The Remaining Websites Are Also Connected to Defendant.**

   **a)     9keyshow.com is Connected to Defendant via an Identical Email Address.**

In Plaintiff's Supplemental Brief in Support of its Motion for Entry of Final Default Judgment, Plaintiff posited, and the Court agreed, that "identical email addresses, either provided to the domain registrar or provided to customers of an Internet website, are strongly indicative of common ownership and control." (e-docket 40 at p. 3.) Indeed, the Court expressly concluded that "any sites providing an email address identical to the one tied directly to US880 are under Defendant's ownership or control." (Id.) Furthermore, the Court agreed that the email address, dreaming987@163.com, is "reliably tied to Defendant." (Id.)

The WHOIS domain registration report for the Internet website operating under the domain name, 9keyshow.com, identifies its contact email address as dreaming987@163.com. (See Gaffigan Decl. in Support of Second Suppl. Brief ¶ 3 and Comp. Ex. 2 thereto.) Accordingly, based upon the Court's previous reasonable assumptions, Plaintiff respectfully submits that the evidence clearly demonstrates that the domain name, 9keyshow.com, is under Defendant's ownership and control.

   **b)     Defendant Uses Identical File Names for Images on the Websites Operating Under the Subject Domain Names.**

File sharing is another analytical tool to evaluate the data and investigative information provided in connection with the Defendant's Internet websites operating under the Subject Domain Names. Specifically, file sharing was used to connect the Subject Domains, justforbag.com, outputbag.com, cooltimberland.com, sunglasses-hut.com, fashionwatches4sales.com, imitatewatch.com, and imitatewatches.com to Defendant. (See Gaffigan Decl. in Support of Second Suppl. Brief ¶ 6.) The image properties of the products displayed on the websites, justforbag.com, outputbag.com, cooltimberland.com, sunglasses-hut.com, fashionwatches4sales.com, imitatewatch.com, and imitatewatches.com, use identical picture file names as those on many websites operating under domain names that the Court has deemed to be under Defendant's ownership and control via WHOIS domain registration records. (Id.) These images are stored on a

7

1  Domain Name System ("DNS") server, which provides the connection between a domain name and
2  the Internet Protocol ("IP") address where a site is hosted.  In cases where identical files images are
3  used on multiple websites, all the images from each website are generally maintained on one DNS
4  server, indicating a common owner.  (Id.)

5  In this case, many of the file names appear to be composed of randomly chosen characters.
6  For example, the domain names, justforbag.com and outputbag.com use the image file name,
7  "aGFuZGJhZ3NiYWdzL2NoYW5lbC8wNDM2NjE0Lnd3d291dHB1dGJhZ2NvbS5sLjUuMTM4Lj
8  A.jpg" for Chanel a branded handbag offered for sale on each of those sites, respectively, which is
9  identical to the file name used by the website operating under the domain name, belovebags.com,
10 which the Court has agreed to be under the Defendant's ownership and control via WHOIS domain
11 name registration information, for the identical Chanel branded handbag offered for sale.  (See
12 Gaffigan Decl. in Support of Second Suppl. Brief ¶ 6.)  Additionally, cooltimberland.com uses the
13 image file name, "bmV3d2F0Y2hlcy8wODI2NTEuMTY1LjEyNA.jpg" for Chanel a branded watch
14 offered for sale on that site, which is identical to the image file name for the same Chanel branded
15 watch offered for sale on the websites operating under the domain names, timberlander.com and
16 watchesagent.com, two domain names which the Court has agreed to be under the Defendant's
17 ownership and control via WHOIS domain name registration information.  (Id.)  The website
18 operating under the domain name, sunglasses-hut.com, uses the image file name,
19 "c3VuZ2xhc3Nlcy8wNzU3NjUuMTUwLjEzNw.jpg" for a pair of Chanel branded sunglasses
20 offered for sale on the site, which is identical to the image file name for the same pair of Chanel
21 branded sunglasses offered for sale on the website operating under the domain name,
22 dearsunglass.com, which the Court has agreed to be under the Defendant's ownership and control
23 via WHOIS domain name registration information.  (Id.)  Finally, fashionwatches4sales.com,
24 imitatewatch.com, and imitatewatches.com use the identical image file name, "sm_Chanel-J12-
25 Stainless-Steel-Case-Watch–H1222.jpg," for Chanel a branded watch offered for sale on each of
26 those sites, respectively.

27 Chanel submits that it is reasonable to conclude that it is extremely unlikely that more than
28

8

one person or entity would use such an unlikely combination of characters to name its files.  Based upon the above, Plaintiff respectfully submits that the evidence clearly demonstrates that the domain names, justforbag.com, outputbag.com, cooltimberland.com, sunglasses-hut.com, fashionwatches4sales.com, imitatewatch.com, and imitatewatches.com, are all under Defendant's ownership and control.

## 2. Plaintiff's Previously Submitted Evidence Establishes Defendant's Ownership and Control of the Remaining Domain Names

In Plaintiff's Supplemental Brief in Support of Its Motion for Entry of Final Default Judgment (e-docket 38), Plaintiff submitted evidence regarding external links between the websites to support its contention that Defendant is also the owner and operator of those websites.  Given the lack of discovery in this case based upon Defendant's failure to participate in this action, Chanel is unable to obtain more detailed evidence.  As such, if the Court finds Chanel's previously submitted evidence as insufficient, Chanel agrees to withdraw its request for relief regarding those websites.

## B. Chanel's Statutory Damages Request is Reasonable.

In its April 14, 2011 Order, the Court expressed concern as to the evidence substantiating the 16 examples of infringements with Plaintiff's corresponding damages methodology.  Accordingly, Plaintiff's counsel has prepared a revised comparison summary table that multiplies the number of trademark registrations at issue herein (11) individually by the number of types of goods upon which each individual registered mark appears.[4]  Chanel's analysis under this methodology is set forth on the chart attached as Exhibit "4" to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's Second Suppl. Brief, demonstrating sixteen (15) total infringements, resulting in a statutory damage award of $45,000.00, if the suggested $3,000 base award amount is employed.  Chanel respectfully

---

[4] In its April 14, 2011 Order, the Court expressed concern regarding that the cited examples of particular infringements.  Accordingly, Plaintiff's revised comparison summary table cites to examples of particular infringements on websites that the Court has already deemed to be under the Defendant's ownership and control.  Although the Registration No. 3,022,708 also appears on scarves, Chanel's revised comparison summary table does not include an example to that particular infringement, because Plaintiff was unable to find an example of its infringement on a website the Court has already deemed to be under the Defendant's ownership and control.

9

---

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR
ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (JSC)

submits that its proposed damages award of $45,000.00 and the methodology used to arrive at that award is based upon a fair and reasonable reading of the "per mark per type of goods" language of § 1117(c).

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defendant in the form of the proposed Final Default Judgment and Permanent Injunction submitted with Plaintiff's Motion for Entry of Final Default Judgment.

Dated:  May 25, 2011                     KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____/S/_____

ANNE E. KEARNS
Attorneys for Plaintiff Chanel, Inc.

**SCHEDULE "A"**
**GROUP I SUBJECT DOMAIN NAMES**

1. 60gome.com
2. atthego.com
3. bagsagent.com
4. belovebags.com
5. belovewrist.com
6. leaderol.com
7. officalugg.com
8. runtimberland.com
9. shopkiss.com
10. timberlander.com
11. timberlandsou.com
12. watchesagent.com
13. bagshow.biz
14. sexyhygeia.com
15. 80trade.com
16. abercrombiesales.com
17. abercrombiestar.com
18. allbestdvd.com
19. bagsontheway.com
20. bapeshopping.com
21. basemall.info
22. hotsalex.com
23. ilikebuy.com
24. ireplicachoice.com
25. ispv.net
26. kicksbap.com
27. kicksboots.com
28. mixitems.com
29. mysoftware123.com
30. onairbuy.com
31. order24hours.com
32. order2you.com
33. youmestore.com
34. topairmax.com
35. topofbikini.com
36. thehandbagssale.com
37. software4cpu.com
38. shixy.com
39. sellelec.com
40. selinged.com
41. robbtrade.com
42. progiftstore.com
43. pearltop.com

11

44. gsshring.com
45. gototbl.com
46. golinksoflondon.com
47. fangpinb2b.com
48. fangpin.net
49. fallowtrade.org
50. e-superbuyer.com
51. edhardyshow.com
52. ed-hardys.com
53. ecspeed.com
54. ecshopking.com
55. ecgoshop.com
56. ecgohere.com
57. ecbape.com
58. easydoing.org
59. dvdsword.com
60. dearpolo.com
61. dearmobiles.com
62. dearbridal.com
63. clortsblog.org
64. bikinismark.com
65. bikinionlineshop.com
66. webmydvd.com
67. victor88.com
68. selingbags.com
69. dearsunglass.com

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR
ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (JSC)

**SCHDULE "B"**
**GROUP II SUBJECT DOMAIN NAMES**

1. 09handbags.com
2. 2youwatch.com
3. 4ezlive.com
4. 8bags4you.com
5. abercrombiepop.com
6. asapshops.com
7. bagslike.com
8. bagsvip.com
9. belovewatch.com
10. bestemplet.com
11. bestsheshox.com
12. bikiniszone.com
13. bosebuynow.com
14. brandsupplieronline.com
15. buddytrade.com
16. buyonebag.com
17. cartggo.com
18. clothinggogo.com
19. dvdlift.com
20. dvdsheaven.com
21. dvdspop.com
22. ecabroad.com
23. ecsalesonline.com
24. ecsharings.com
25. enjoyalley.com
26. feelmoving.com
27. firsttidebags.com
28. flat-ironchi.com
29. gahoos.com
30. globalprada.com
31. godshopking.com
32. godshops.com
33. hotandpop.com
34. inexquisite.com
35. inthego.org
36. jeanecb.com
37. londonlinksinc.com
38. lovegymshoes.com
39. luxuryinbags.com
40. macygood.com
41. mazillas.com
42. meishucheng.com
43. mydvddvds.com

PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF IT'S MOTION FOR
ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT
CASE NO. 4:10-cv-02601-PJH (JSC)

44. mygoodwatches.com
45. mylovinearphone.com
46. mylovintech.com
47. myoxette.com
48. mysterybuying.com
49. mywatchestore.com
50. netabercrombie.com
51. njlp.net
52. nokiasphone.com
53. officalsell.com
54. okeyby.com
55. oncomes.com
56. ondunk.com
57. onexquisite.com
58. onlinenbastar.com
59. ordernokia.com
60. passsale.com
61. plubrands.com
62. popdksb.com
63. poportop.com
64. poppolo4you.com
65. populashow.com
66. realafestate.com
67. shoppingyouself.com
68. thelinksuk.com
69. themydvd.com
70. thewebdvd.com
71. watch11.com
72. watchesteam.com
73. watchtoyou.com
74. webfashionsite.com
75. webgoshop.com
76. wristwatchnew.com

77. 9keyshow.com

78. justforbag.com
79. outputbag.com
80. cooltimberland.com
81. sunglasses-hut.com
82. fashionwatches4sales.com
83. imitatewatch.com
84. imitatewatches.com

85. andany.com
86. anhandbag.com

14

87. bagsagent.co.uk
88. bytshirt.com
89. elegantsale.com
90. fallowtrade.org
91. hellorolex.com
92. kissbusy.com
93. maxshoesworld.com
94. mybagcollect.com
95. ok-replica.com
96. olugg.com
97. replica-lv.com
98. softwareonthisway.com
99. storereplica.com
100. stylesheet.me
101. timhightop.com
102. treasurepub20.com
103. uppetop.com
104. walletmarkets.com
105. watcheslike.com
106. web3gtimes.com
107. wholesale-retailer.com
108. wwbagss.com