United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHANEL, INC.,

        Plaintiff,

  v.

US880,

        Defendant.

_____/

No. C 10-02601 PJH (JSC)

**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

In this trademark infringement action, Chanel, Inc., moves for Final Default Judgment Against Defendant seeking default judgment, an award of statutory damages, costs of the suit and a permanent injunction against Defendant US880.  Having considered Chanel's motion for default judgment, the supplemental briefing and evidence thereafter provided by Chanel, the previous orders issued by Magistrate Judge Chen, and all the other evidence of record, the Court hereby recommends that the motion be GRANTED.

**FACTUAL & PROCEDURAL BACKGROUND**

Chanel is a New York corporation with its principal place of business located at Nine West 57th Street, New York, New York 10019.  Complaint ¶ 3 (Dkt. 1).  Chanel operates boutiques throughout the world and is engaged in the business of manufacturing and distributing luxury goods including handbags, wallets and watches in this judicial district and throughout the world.  Dkt. 1 ¶ 3.

**United States District Court**
For the Northern District of California

Chanel filed the Complaint in this action on June 11, 2010 naming US880 and Does 1-10 as Defendants. Chanel alleges that it is the owner of eleven federally registered trademarks. Dkt. 1 ¶ 10. The marks are used in connection with the manufacture and distribution of items such as handbags, wallets and watches. See id. Plaintiff alleges that Defendants are individuals and/or business entities operating under the following fifteen domain names: 360gome.com, allofbags.com, atthego.com, bagsagent.com, bagsshow.com, belovebags.com, belovewrist.com, iluxuryonline.com, leaderol.com, officalugg.com, runtimberland.com, shopkiss.com, timberlander.com, timberlandsou.com, watchesagent.com. Dkt. 1 ¶ 4 & Schedule A (List of Domain Name Entities). Plaintiff alleges that Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale counterfeit products, including at least handbags, wallets and watches, using trademarks which are exact copies of the Chanel Marks through these domain names. Dkt. 1 ¶ 18. The counterfeit goods are of a quality substantially different from Chanel's genuine goods. Dkt. 1 ¶ 19. Plaintiff alleges Defendants are knowingly using the Chanel marks without Chanel's consent or authorization resulting in consumer confusion. Dkt. 1 ¶¶ 19, 22, 24. Based on the above allegations, Chanel makes claims for (1) trademark counterfeiting and infringement; and (2) false designation of origin in violation of the Act. See 15 U.S.C. §§ 1114, 1125(a).

On September 14, 2010, Plaintiff filed an Ex Parte Application for Order Authorizing Alternate Service of Process Pursuant to Federal Rule of Civil Procedure 4(f)(3). Plaintiff sought an order allowing for service of process via electronic mail pursuant to Rule 4(f)(3) because Plaintiff was unable to locate and serve Defendant US880 in any other way. Plaintiff alleged that service via electronic mail was appropriate because Defendant (1) operates anonymously via the Internet using false physical address information in the registrations for the Subject Domain Names in order to conceal Defendant's location and avoid liability for the unlawful conduct; and (2) relies solely on electronic communications to operate its businesses. The Court granted Plaintiff's application on September 17, 2010. The Summons and Complaint were served on Defendant via electronic mail on September 20, 2010. Defendant failed to file a responsive pleading or otherwise appear and the clerk entered default pursuant to Federal Rule of Civil Procedure 55(a) on October 19, 2010.

**United States District Court**
For the Northern District of California

1    <u>**Motion for Default Judgment**</u>

2    On January 6, 2011, Chanel filed a Motion for Default Judgment seeking a default judgment

3    against Defendant as to Plaintiff's claims for trademark infringement with respect to eleven federally

4    registered trademarks and false designation of origin.  Plaintiff seeks an award of statutory damages,

5    the costs of the suit and a permanent injunction against Defendant.  Plaintiff asserts that the twelve

6    websites identified in the Complaint (the Subject Domain Names), as well as 164 additional

7    websites (the Additional Domain Names) are operated by Defendant.[1]   <u>See</u> Dkt. 14.  The combined

8    list of domain names is as follows:

9        1. 360gome.com
         2. atthego.com
10       3. bagsagent.com
         4. belovebags.com
11       5. belovewrist.com
         6. leaderol.com
12       7. officalugg.com
         8. runtimberland.com
13       9. shopkiss.com
         10. timberlander.com
14       11. timberlandsou.com
         12. watchesagent.com
15       13. 09handbags.com
         14. 2youwatch.com
16       15. 4ezlive.com
         16. 80trade.com
17       17. 8bags4you.com
         18. 9keyshow.com
18       19. abercrombiepop.com
         20. abercrombiesales.com
19       21. abercrombiestar.com
         22. allbestdvd.com
20       23. andany.com
         24. anhandbag.com
21       25. asapshops.com
         26. bagsagent.co.uk
22       27. bagslike.com
         28. bagsontheway.com
23       29. bagsshow.biz
         30. bagsvip.com
24       31. bapeshopping.com
         32. basemall.info
25       33. belovewatch.com

26   ─────────────────

27   [1] Although the Schedule A list of Subject Domain Names attached to the Complaint identifies
     fifteen websites, the Schedule A list of Subject Domain Names attached to the Motion for Default
28   Judgment only identifies twelve websites.  <u>Compare</u> Dkt. 1, Schedule A <u>with</u> Dkt. 14, Schedule A.
     Plaintiff does not explain this discrepancy. This order utilizes the Schedule A attached to the Motion
     for Default Judgment.

34. bestemplet.com
35. bestsheshox.com
36. bikinionlineshop.com
37. bikinismark.com
38. bikiniszone.com
39. bosebuynow.com
40. brandsupplieronline.com
41. buddytrade.com
42. buyonebag.com
43. bytshirt.com
44. cartggo.com
45. clortsblog.org
46. clothinggogo.com
47. cooltimberland.com
48. dearbridal.com
49. dearmobiles.com
50. dearpolo.com
51. dearsunglass.com
52. dvdlift.com
53. dvdsheaven.com
54. dvdspop.com
55. dvdsword.com
56. easydoing.org
57. ecabroad.com
58. ecbape.com
59. ecgohere.com
60. ecgoshop.com
61. ecsalesonline.com
62. ecsharings.com
63. ecshopking.com
64. ecspeed.com
65. ed-hardys.com
66. edhardyshow.com
67. elegantsale.com
68. enjoyalley.com
69. e-superbuyer.com
70. fallowtrade.org
71. fangpin.net
72. fangpinb2b.com
73. fashionwatches4sales.com
74. feelmoving.com
75. firsttidebags.com
76. flat-ironchi.com
77. gahoos.com
78. globalprada.com
79. godshopking.com
80. godshops.com
81. golinksoflondon.com
82. gototbl.com
83. gsshring.com
84. hellorolex.com
85. hotandpop.com
86. hotsalex.com
87. ilikebuy.com
88. imitatewatch.com
89. imitatewatches.com

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

90. inexquisite.com
91. inthego.org
92. ireplicachoice.com
93. ispv.net
94. jeanecb.com
95. justforbag.com
96. kicksbap.com
97. kicksboots.com
98. kissbusy.com
99. londonlinksinc.com
100. lovegymshoes.com
101. luxuryinbags.com
102. macygood.com
103. maxshoesworld.com
104. mazillas.com
105. meishucheng.com
106. mixitems.com
107. mybagcollect.com
108. mydvddvds.com
109. mygoodwatches.com
110. mylovinearphone.com
111. mylovintech.com
112. myoxette.com
113. mysoftware123.com
114. mysterybuying.com
115. mywatchestore.com
116. netabercrombie.com
117. njlp.net
118. nokiasphone.com
119. officalsell.com
120. okeyby.com
121. ok-replica.com
122. olugg.com
123. onairbuy.com
124. oncomes.com
125. ondunk.com
126. onexquisite.com
127. onlinenbastar.com
128. order24hours.com
129. order2you.com
130. ordernokia.com
131. outputbag.com
132. passsale.com
133. pearltop.com
134. plubrands.com
135. popdksb.com
136. poportop.com
137. poppolo4you.com
138. populashow.com
139. progiftstore.com
140. realafestate.com
141. replica-lv.com
142. robbtrade.com
143. selingbags.com
144. selinged.com
145. sellelec.com

**United States District Court**
For the Northern District of California

146. sexyhygeia.com
147. shixy.com
148. shoppingyouself.com
149. software4cpu.com
150. softwareonthisway.com
151. storereplica.com
152. stylesheet.me
153. sunglasses-hut.com
154. thehandbagssale.com
155. thelinksuk.com
156. themydvd.com
157. thewebdvd.com
158. timhightop.com
159. topairmax.com
160. topofbikini.com
161. treasurepub20.com
162. uppetop.com
163. victor88.com
164. walletmarkets.com
165. watch11.com
166. watcheslike.com
167. watchesteam.com
168. watchtoyou.com
169. web3gtimes.com
170. webfashionsite.com
171. webgoshop.com
172. webmydvd.com
173. wholesale-retailer.com
174. wristwatchnew.com
175. wwbagss.com
176. youmestore.com

In the Motion for Default Judgment, Plaintiff asserts that the 176 websites listed in Schedules A & B filed therewith are used by Defendant to operate interactive commercial websites that advertise and sell counterfeit, infringing products bearing Chanel's trademarks.

Plaintiff retained Jason Holmes ("Holmes") of IPCubercrime.com, LLC, to investigate the sale of counterfeit Chanel branded products by Defendant via the websites operating under the domain names listed in Schedule A attached to Plaintiff's Ex Parte Application for Order Authorizing Alternate Service of Process.  See Declaration of Jason Holmes ¶ 3 (Dkt. 11-2). Holmes ordered a wallet bearing a Chanel mark from bagsshow.com.  Holmes communicated with the bagshow.com customer service via the email address cheapbags@thxshops.com.  See Dkt. 11-2 ¶ 5.  Holmes conducted a forensic analysis of the email response from cheapbags@thxshops.com and traced the email communication to a computer terminal located in China, with an IP address of 58.22.131.114.  See Dkt. 11-2 ¶ 5.  On June 29, 2010, Holmes received the wallet he ordered

United States District Court
For the Northern District of California

1  shipped to his address in San Jose, California.  See Dkt. 11-2, Dkt. 11-3. The shipping label on the

2  outer package identified Foshan, China as the origin of shipping.  See Dkt. 11-2 ¶ 4; Dkt. 11-3.

3          Holmes also reviewed the WHOIS records for the Subject Domain Names and determined

4  that Defendant used the same contact email address, dreaming987@163.com, in the registration

5  records for all the Subject Domain Names.  See Dkt. 11-2 ¶ 7.  According to his investigation, the

6  email address is valid and operational.  See Dkt. 11-2 ¶ 7.

7          In the Motion for Default Judgment, Chanel alleges that since filing the Complaint it

8  received information that Defendant was also counterfeiting and infringing the Chanel Marks

9  through additional Internet websites.[2]  Chanel alleges that as with the Subject Domain Names these

10  additional websites advertise and offer for sale products bearing various counterfeits of the Chanel

11  trademarks or provide support and direct customer traffic to websites advertising and offering for

12  sale the counterfeit Chanel products.  See Dkt. 22 ¶ 3; Dkt. 21 ¶¶ 10-11.

13          On February 25, 2011, then Magistrate Judge Edward M. Chen ordered Plaintiff to provide

14  supplemental briefing and evidence as to its claim that there is personal jurisdiction over Defendant,

15  a foreign entity that appears to reside in China.  Chanel responded that the Court has personal

16  jurisdiction over Defendant because Defendant has sufficient minimum contacts with the State of

17  California that relate directly to Chanel's causes of action, has purposefully directed its illegal

18  activities toward this forum, and Chanel's allegations against Defendant arise, at least in part, out of

19  Defendant's forum related activities.

20          On March 11, 2011, Plaintiff voluntarily dismissed the claims against Does 1-10 without

21  prejudice.  See Dkt. 33.

22  ─────────────────

23      [2]  Although Plaintiff did not file an amended complaint setting forth the allegations regarding
the additional 164 websites, under Federal Rule of Civil Procedure 15(d) inclusion of Plaintiff's
24  allegations regarding these websites in the Motion for Final Default Judgment was sufficient to
supplement the pleadings.  Rule 15 allows a court to permit a "supplemental pleading setting out any
25  transaction, occurrence, or event that happened after the date of the pleading to be supplemented" as
long as notice is provided to the opposing party.  See Fed. R. Civ. P. 15(d); see also United States v.
26  Reiten, 313 F.2d 673, 674 (9th Cir. 1963) (stating that "there is no reason to read into Rule 15(d) an
inflexible limitation upon the broad power vested in the District Court to permit supplemental pleading
27  . . . allowance or denial of leave to file a supplemental pleading is addressed to the sound discretion of
the District Court").  Defendant had notice of the allegations regarding these websites because Plaintiff
28  served Defendant with a copy of the Motion for Final Default Judgment.  See Dkt. 25.  Accordingly,
the Court finds that Plaintiff's inclusion of allegations regarding the additional 164 websites discovered
subsequent to filing the Complaint is proper.

United States District Court
For the Northern District of California

On March 16, 2011, Judge Chen held a hearing regarding Plaintiff's Motion for Final Default Judgment.  At the hearing, the Court asked for further briefing regarding (1) Defendant's relationship with the businesses operating under the Subject Domain Names; (2) the inclusion of three goods not expressly identified in Chanel's Complaint that were alleged to be infringed in Chanel's Motion for Final Default Judgment; (3) Chanel's requested statutory damages award, including the basis for Chanel's suggestion that the Court start with the statutory minimum award of $3,000.00 per registered Chanel trademark counterfeited (eleven) per type of goods sold (six – handbags, wallets, watches, sunglasses, scarves, and swimwear), for a total award of $198,000.00 in statutory damages; and (4) the equitable relief Chanel requested in the form of placing the Subject Domain Names on Registry Hold status for the life of the current registration.

In response, Chanel filed a Supplemental Brief in Support of Motion for Entry of Final Default Judgment.  Chanel clarified that the Subject Domain Names, as identified in Schedule A attached to the Complaint, were identified based on six metrics (1) email addresses used; (2) tracking codes; (3) website redirection; (4) linking between the websites; (5) names, physical addresses, and telephone numbers provided on the websites and/or provided as part of the WHOIS domain name registration reports; and (6) self identifications.  See Supplemental Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion for Final Default Judgment ¶¶ 9-10 & Exhibit 2 thereto (Dkt. 38-4).  Chanel alleged that since filing the Complaint it discovered both that Defendant was operating additional websites offering counterfeit goods and that Defendant had expanded the items it was counterfeiting and infringing from handbags, wallets and watches, to also include sunglasses, scarves, and swimwear.

On April 14, 2011, Judge Chen issued an order making certain findings regarding the Motion for Final Default and requesting further briefing regarding Chanel's request for statutory damages and the evidence establishing Defendant's ownership and control of all 176 websites.  See Dkt. 40. Judge Chen found that Chanel's statutory damages calculation methodology (assessing a statutory penalty for each alleged infringement) appeared reasonable; however, the Court found that Plaintiff had failed to prove each of the eleven marks were infringed by each of the six types of goods.

The Court also found that Chanel had established that fourteen Internet domains (the twelve "Subject Domain Names" listed in Schedule A to the Supplemental Gaffigan Declaration plus two of the "Additional Domain Names" listed in Schedule B attached the Motion for Final Default Judgment) are registered to Defendant US880.  See Dkt. 40 at p. 2.  The Court found that of the six metrics used to establish that Defendant owned the websites at issue, actual registration data was the strongest link and only these fourteen Internet domains could be tied to Defendant through actual registration data.  See id. at p. 3.  However, the Court also found that five of the other six metrics Plaintiff used to establish ownership of the websites were proper; specifically, the Court found that those websites that use the common email address of dreaming987@163.com can reliably be tied to Defendant and that Chanel could also use tracking codes, website redirection and self-identifications to establish Defendant's ownership of websites.  See id. at pp. 2-5.  Based on this rationale, the Court found that the following sixty-nine websites are under Defendant's ownership or control:

1. 360gome.com
2. atthego.com
3. bagsagent.com
4. belovebags.com
5. belovewrist.com
6. leaderol.com
7. officalugg.com
8. runtimberland.com
9. shopkiss.com
10. timberlander.com
11. timberlandsou.com
12. watchesagent.com
13. bagshow.biz
14. sexyhygeia.com
15. 80trade.com
16. abercrombiesales.com
17. abercrombiestar.com
18. allbestdvd.com
19. bagsontheway.com
20. bapeshopping.com
21. basemall.info
22. hotsalex.com
23. ilikebuy.com
24. ireplicachoice.com
25. ispv.net
26. kicksbap.com
27. kicksboots.com
28. mixitems.com
29. mysoftware123.com
30. onairbuy.com
31. order24hours.com
32. order2you.com

33. youmestore.com
34. topairmax.com
35. topofbikini.com
36. thehandbagssale.com
37. software4cpu.com
38. shixy.com
39. sellelec.com
40. selinged.com
41. robbtrade.com
42. progiftstore.com
43. pearltop.com
44. gsshring.com
45. gototbl.com
46. golinksoflondon.com
47. fangpinb2b.com
48. fangpin.net
49. fallowtrade.org
50. e-superbuyer.com
51. edhardyshow.com
52. ed-hardys.com
53. ecspeed.com
54. ecshopking.com
55. ecgoshop.com
56. ecgohere.com
57. ecbape.com
58. easydoing.org
59. dvdsword.com
60. dearpolo.com
61. dearmobiles.com
62. dearbridal.com
63. clortsblog.org
64. bikinismark.com
65. bikinionlineshop.com
66. webmydvd.com
67. victor88.com
68. selingbags.com
69. dearsunglass.com

See Dkt. 40, Appendix A attached thereto. With respect to the remaining websites, the Court allowed Plaintiff to supplement its filing to enhance the list. The Court also provided Plaintiff the opportunity to file a supplemental brief listing substitute exemplars of alleged infringements based on those approved websites identified in the attached Appendix A to prove violations entitling Plaintiff to statutory damages and to enhance its table of infringements to assert more than sixteen infringements. See Dkt. 40 at p. 6.

On May 24, 2011, this case was re-referred to the undersigned due to Judge Chen's elevation to Article III status.

1      Plaintiff filed a Second Supplemental Brief in Support of Motion for Entry of Final Default

2  Judgment, on May 25, 2011.  Chanel alleges that ownership of the remaining 107 websites can be

3  directly traced to Defendant and now seeks a statutory damages award of $45,000.00 based on

4  fifteen total infringements.[3]

5                                    **ANALYSIS**

6  **I.      Personal Jurisdiction**

7      Personal jurisdiction is proper provided it is "consistent with the [California] long-arm

8  statute, and comports with due process of law."  Boschetto v. Hansing, 539 F.3d 1011, 1020-21 (9th

9  Cir. 2008).  Under California's long-arm statute a federal court can exercise personal jurisdiction

10 over defendants if doing so comports with federal constitutional due process.  See Harris Rutsky &

11 Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).  "For a court

12 to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least

13 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend

14 traditional notions of fair play and substantial justice.'"  Schwarzenegger v. Fred Martin Motor Co.,

15 374 F.3d 797, 801 (9th Cir. 2004) (internal citations omitted).

16     A three-step process applies to determine whether specific jurisdiction exists:

17     (1) the non-resident defendant must purposefully direct his activities or consummate
       some transaction with the forum or resident thereof; or perform some act by which he
18     purposefully avails himself of the privileges of conducting activities in the forum,
       thereby invoking the benefits and protections of its laws; (2) the claim must be one
19     which arises out of or relates to the defendant's forum-related activities; and (3) the
       exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must
20     be reasonable.

21 Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1484 (9th Cir. 1993).  The factual

22 allegations and evidence support a finding of specific jurisdiction over Defendant in this case.

23     To establish purposeful availment, a plaintiff must demonstrate that the defendant

24 "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business

25

26     [3]  In Plaintiff's Second Supplemental Brief in Support of Motion for Entry of Final Default
    Judgment, Chanel states that there are 108 websites.  There are only 107 websites.  Chanel included one
27 of the websites, fallowtrade.org, both on the list of sixty-nine websites Judge Chen found tied to
    Defendant and on the list of websites which it still seeks to tie to Defendant.  Compare Schedule A
28 attached to Plaintiff's Second Suppl. Brief at No. 49 with Schedule B attached to Plaintiff's Second
    Suppl. Brief at No. 90.

                                        11

United States District Court
For the Northern District of California

1    within the forum state." Gray & Co. V. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990).

2    A defendant purposefully directs activity at a forum state when he "(1) commit[s] an intentional act,

3    (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

4    suffered in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 805 (9th Cir.

5    2004).  The Ninth Circuit uses a sliding scale analysis "that looks to how interactive an Internet

6    website is for purposes of determining its jurisdictional effect." Boschetto v. Hansing, 539 F.3d

7    1011, 1018 (9th Cir. 2008).

8           Here, Plaintiff's allegations and evidence are sufficient to show purposeful availment.

9    Plaintiff alleges that Defendant is engaged in intentional acts of trademark infringement and

10   counterfeiting and false designation of origin, and is committing these illegal activities via multiple

11   fully interactive commercial websites which advertise and offer for sale counterfeit Chanel branded

12   products.  Plaintiff has presented evidence demonstrating that the web pages offering the allegedly

13   counterfeit products are interactive, and target consumers in California and throughout the United

14   States.  See Declaration of Stephen M. Gaffigan in Support of Plaintiff's Supplemental

15   Memorandum Regarding Personal Jurisdiction ¶¶ 3-4 (Dkt. 32-1).   For example, Chanel's private

16   investigator purchased a counterfeit Chanel branded wallet from one of these websites

17   (bagsshow.com) and it was sent directly to the investigator's address in San Jose, California.  See

18   Dkt. 11-2 ¶¶ 4-5.  Such commercial activity in the forum amounts to purposeful availment of the

19   privilege of conducting activities within the forum, thus invoking the benefits and protections of its

20   laws.  See Gucci America v. Wang Huoqing, No. 09-05969, 2011 WL 31191, at *5-6 (N.D. Cal. Jan.

21   3, 2011) (citing Schwarzenegger, 374 F.3d at 802).  The Court finds that Defendant's contacts with

22   California are sufficient to show purposeful availment.

23          The second prong of the specific jurisdiction test requires that the claim be one that arises out

24   of or relates to defendant's activities in the forum.  See Panavision Intern., L.P. v. Toeppen,

25   141 F.3d 1316, 1320 (9th Cir. 1998).  Chanel alleges that Defendant's websites target consumers in

26   the District and as a result of these websites Chanel boutiques within the District suffer harm in the

27   form of lost sales and damaged reputation.  See Dkt. 1 ¶ 3 & Dkt. 32-1 ¶¶ 3-4.  Therefore, the

28   second prong is met because "but for" Defendant's infringing activity, Plaintiff would not have been

United States District Court
For the Northern District of California

1  injured.  See Gucci America v. Wang Huoqing, No. 09-05969, 2011 WL 31191, at *7 (N.D. Cal.

2  Jan. 3, 2011)

3          The third prong of the specific jurisdiction test provides that the exercise of jurisdiction must

4  comport with fair play and substantial justice.  See Panavision,141 F.3d at 1320.  "If the plaintiff

5  succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present

6  a compelling case' that the exercise of jurisdiction would not be reasonable."  See Schwarzenegger

7  v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Burger King Corp. v.

8  Rudzewicz, 471 U.S. 462, 476-78 (1985)).  Courts generally consider seven factors in determining

9  whether the exercise of jurisdiction is reasonable:

10          (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
           (2) the burden on the defendant of defending in the forum; (3) the extent of conflict
11          with the sovereignty of the defendants' state; (4) the forum state's interest in
           adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;
12          (6) the importance of the forum to the plaintiff's interest in convenient and effective
           relief; and (7) the existence of an alternative forum.
13
14   Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Here, the majority

15  of factors weigh in favor of a finding that the exercise of personal jurisdiction is reasonable.

16  Although Defendant is a resident of China and the burden on Defendant to litigate in California is

    significant, Defendant has purposefully availed itself of the benefits of conducting business within
17
    this forum.  The exercise of jurisdiction under these circumstances is not unreasonable.  To the
18
    extent that the exercise of jurisdiction might conflict with the sovereignty of Defendant's state, this
19
    factor weighs in Defendant's favor; however, the other Core-Vent factors all support a finding of
20
    personal jurisdiction absent any showing by Defendant to the contrary.  See Gucci America v. Wang
21
    Huoqing, No. 09-05969, 2011 WL 31191, at *7-8 (N.D. Cal. Jan. 3, 2011).  The Court thus
22
    concludes that the exercise of personal jurisdiction over Defendant is reasonable.
23
     **II.    Default Judgment**
24
            After entry of default, a court may grant default judgment on the merits of the case.  See Fed.
25
    R. Civ. P. 55.  Upon entry of default, the factual allegations of the complaint, except those
26
    concerning damages, are deemed to have been admitted by the non-responding party.  Geddes v.
27
    United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).            "The district court's decision
28
    whether to enter a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092

                                                  13

**United States District Court**
For the Northern District of California

1   (9th Cir. 1980).  The Court should consider the following factors in determining whether to enter

2   default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

6   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  For the reasons discussed below each of

7   these factors support default judgment.

8       **A.**    **The Merits of Plaintiff's Claims and Sufficiency of the Complaint**

9           In this case, the crucial factors are the second and third – the merits of plaintiff's substantive

10  claims and the sufficiency of the evidence.  These factors essentially require Plaintiff to state a claim

11  on which it may recover.  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  As noted above,

12  in its Complaint, Chanel asserts claims for (1) trademark counterfeiting and infringement in

13  violation of 15 U.S.C. § 1114; and (2) false designation of origin in violation of section 1125(a).

14      **1)**    **Trademark Counterfeiting and Infringement**

15          To prevail on a claim for trademark infringement, a holder of a registered service mark must

16  show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a

17  mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering

18  for sale, distribution or advertising or any goods; (5) where such use is likely to cause confusion, or

19  to cause a mistake or to deceive.  See Gucci America v. Wang Huoqing, No. 09-05969, 2011 WL

20  31191, at *9 (N.D. Cal. Jan. 3, 2011).  "Neither actual confusion nor intent is necessary to a finding

21  of likelihood of confusion."  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir.

22  1988).  The crucial question is "whether the public is likely to be deceived or confused by the

23  similarity of the marks."  New West Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th Cir.

24  1979) (citations omitted).

25          Plaintiff is the owner of eleven federally registered trademarks (five of which consist of the

26  word Chanel, four of which consist of a CC monogram and one consists of the word J12).  Dkt. 1 ¶

27  11; Dkt. 21 ¶ 5 & Ex. 1.  It has expended substantial time, money and other resources developing,

28  advertising and otherwise promoting the Chanel trademarks.  See Dkt. 1 ¶ 13.  It never assigned or

**United States District Court**
For the Northern District of California

licensed these trademarks to the Defendant and Defendant does not have, nor has it ever had, the right or authority to use the trademarks for any purpose.  See Dkt. 1 ¶¶ 11, 17.  Defendant is engaged in the fraudulent promotion, advertising, distributing, offering for sale and sale of goods bearing counterfeits of the Chanel trademarks over the Internet.  See Dkt. 1 ¶¶ 18-20; Dkt. 22 ¶¶ 3-5; Dkt. 21  ¶¶ 10-11.  Defendant's actions are causing confusion, mistake, and deception among members of the trade and confusing the public as to the origin and quality of Defendant's counterfeit goods.  See Dkt. 1 ¶ 24.  Plaintiff has presented evidence that 150 of the websites identified in Plaintiff's Motion for Final Default Judgment are owned or controlled by Defendant.

Plaintiff  has also submitted copies of the Federal Registrations for the eleven Chanel trademarks at issue in this action, which establish that Chanel is the owner of the respective trademarks.  See Dkt. 21 ¶ 5 & Dkt. 21-1.  Based on the evidence submitted with the Declaration of Adrienne Hahn Sisbarro in Support of Chanel's Motion for Entry of Final Default it appears that Defendant's websites offer for sale non-authentic products that carry Plaintiff's trademarks.  See Dkt. 21 ¶¶ 10-11 (stating that she reviewed printouts from websites operating under the Subject Domain Names and the Additional Domain Names and determined that the products Defendant was offering for sale under the Chanel trademarks were non-genuine counterfeit products).  Plaintiff has thus presented sufficient evidence to support the claim for trademark infringement.

### 2)      False Designation of Origin

Plaintiff alleges that Defendant's use of the Chanel trademarks constitutes false designation of origin in violation of  section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).   The statute states in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

United States District Court
For the Northern District of California

1    shall be liable in a civil action by any person who believes that he or she is or is
2    likely to be damaged by such act.

3    15 U.S.C. § 1125(a).

4        Plaintiff has offered evidence establishing that it owns the eleven trademarks at issue here.

5    See Dkt. 21 ¶ 5 & Dkt. 21-1.  Plaintiff has also demonstrated that it uses the trademarks in

6    commerce.   See Dkt. 21 ¶ 4-6.  Finally, Plaintiff has offered evidence that Defendant "used terms

7    or designs similar to plaintiff's marks without the consent of the plaintiff in a manner that is likely to

8    cause confusion among ordinary purchasers as to the source of the goods."  See Chimney Safety

9    Institute of America v. Chimney King, 2004 WL 1465699, at *2 (N.D. Cal. May 27, 2004).

10   Plaintiff has thus presented sufficient evidence to state a claim for false designation of origin under

11   15 U.S.C. § 1125(a).

12       **B.**       **The remaining Eitel Factors**

13       The remaining Eitel factors support default judgment as well.   First, if the motion for default

14   judgment were to be denied, then Chanel would likely be left without a remedy.  See Pepsico, Inc. v.

15   Cal. Sec. Cans, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).  Second, the sum of money at stake in

16   the action is appropriate – statutory damages are expressly provided for in 15 U.S.C. § 1117(c).

17   Third, because Defendant has not answered the Complaint or otherwise appeared in this action, the

18   possibility of a dispute concerning material facts is unknown.  Fourth, Plaintiff properly served the

19   Defendant pursuant to the Court's Order Authorizing Alternate Service of Process on Defendant

20   Pursuant to Federal Rule of Civil Procedure 4(f)(3) and there is no evidence in the record that

21   Defendant's failure to appear and otherwise defend this action was the result of excusable neglect.

22   See Declaration of Anne E. Kearns in Support of Plaintiff's Motion for Entry of Final Default

23   Judgment Against Defendant ¶¶ 2-4 (Dkt. 20).  The seventh Eitel factor, balancing the policy

24   consideration that whenever reasonably possible cases should be decided on their merits, weighs

25   against default judgment.  Eitel, 782 F.2d at 1472.  However, where, as here, Defendant has failed to

26   appear, a decision on the merits is impossible.  This factor alone does not preclude default judgment.

27       Accordingly, the Court concludes that Chanel has adequately stated a claim for trademark

28   counterfeiting and infringement pursuant to 15 U.S.C. § 1114(1)(a) and false designation of origin

United States District Court

For the Northern District of California

1    pursuant to § 1125(a).  Because Chanel has adequately stated a claim for relief, and because the

2    remaining Eitel factors largely weigh in favor of Chanel, the Court recommends that Chanel's

3    Motion for Default Judgment be granted.

4    **III.    Injunctive Relief, Damages, and Attorney's Fees**

5            **A.     Injunctive Relief**

6            Chanel seeks two forms of injunctive relief.  First, Chanel seeks a permanent injunction

7    barring Defendant from manufacturing, importing, advertising, promoting, distributing, selling, or

8    offering to sell goods that infringe on Chanel's trademarks.  Second, Chanel seeks an order either

9    transferring the websites to Plaintiff or requiring the registry operators to disable the websites.

10           Under 15 U.S.C. § 1116(a), a court has the "power to grant injunctions according to

11   principles of equity and upon such terms as the court may deem reasonable, to prevent the violation

12   of any right the registrant of a mark."  15 U.S.C. § 1116(a).  "The Supreme Court recently reiterated

13   that district courts should apply 'traditional equitable principles' in deciding whether to grant

14   permanent injunctive relief,  and the decision is 'an act of equitable discretion by the district court,

15   reviewable on appeal for abuse of discretion.'"  Reno Air Racing Ass'n., Inc. v. McCord,

16   452 F.3d 1126, 1137-38 (9th Cir. 2006) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388,

17   391 (2006)).

18           Here, traditional equitable principles weigh in favor of an injunction.  Plaintiff has provided

19   evidence of Defendant's on-going infringing activity demonstrating a likelihood of success on the

20   merits.   Chanel has established a likelihood of confusion with respect to Defendant's use of the

21   counterfeit trademarks and the balance of hardships tips in Chanel's favor.   Defendant's ongoing

22   use of the counterfeit marks to sell inferior goods could harm Chanel's reputation and goodwill thus

23   causing irreparable harm.  Accordingly, the Court recommends that an injunction in favor of Chanel

24   be issued.

25           Having determined that Plaintiff is entitled to injunctive relief, the Court must determine the

26   appropriate scope of relief.  Pursuant to Federal Rule of Civil Procedure 65(d)  "every order granting

27   an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; [and] shall

28   describe in reasonable detail . . . the act or acts sought to be restrained."  Fed. R. Civ. P. 65(d).  A

1    broad injunction is appropriate "when the infringing use is for a similar service." Perfumebay.com

2    Inc. v. eBay, Inc., 506 F.3d 1165, 1177 (9th Cir. 2007) (quoting GoTo.com, Inc. v. Walt Disney Co.,

3    202 F.3d 1199, 1211 (9th Cir. 2000).

4         Plaintiff seeks the following injunctive relief:

5         Defendant and its respective officers, agents, servants, employees and attorneys, and
          all persons in active concert and participation with it are hereby restrained and
6         enjoined from:

7         (a) manufacturing or causing to be manufactured, importing, advertising, or
          promoting, distributing, selling or offering to sell counterfeit and infringing goods
8         using the Chanel Marks;

9         (b) using the Chanel Marks in connection with the sale of any unauthorized goods;

10        (c) using any logo, and/or layout which may be calculated to falsely advertise the
          services or products of the Defendant, the Subject Domain Names, and/or any other
11        website or business, as being sponsored by, authorized by, endorsed by, or in any
          way
12        associated with Chanel;

13        (d) falsely representing itself as being connected with Chanel, through sponsorship or
          association;

14

15        (e) engaging in any act which is likely to falsely cause members of the trade and/or of
          the purchasing public to believe any goods or services of the Defendant, the Subject
          Domain Names, and/or any other website or business, are in any way endorsed by,
16        approved by, and/or associated with Chanel;

17        (f) using any reproduction, counterfeit, copy, or colorable imitation of the Chanel
          Marks in connection with the publicity, promotion, sale, or advertising of any goods
18        sold by the Defendant, the Subject Domain Names, and/or any other website or
          business, including, without limitation, handbags, wallets, and watches;

19

20        (g) affixing, applying, annexing or using in connection with the sale of any goods, a
          false description or representation, including words or other symbols tending to
          falsely describe or represent goods by the Defendant, the Subject Domain Names,
21        and/or any other website or business, as being those of Chanel, or in any way
          endorsed by Chanel;

22

23        (h) offering such goods in commerce;

          (i) and from otherwise unfairly competing with Chanel;
24

25        (j) secreting, destroying, altering, removing, or otherwise dealing with the
          unauthorized products or any books or records which contain any information
26        relating to the importing, manufacturing, producing, distributing, circulating, selling,
          marketing, offering for sale, advertising, promoting, renting or displaying of all
          unauthorized products which infringe the Chanel Marks; and

27

28        (k) effecting assignments or transfers, forming new entities or associations or
          utilizing
          any other device for the purpose of circumventing or otherwise avoiding the

18

1    prohibitions set forth above; and

2    (2) Additional Equitable Relief:

3    (l) The Subject Domain Names are hereby ordered to be immediately transferred by
     the Defendant, its assignees and/or successors in interest or title, and the Registrars to

4    Chanel's control. To the extent the current Registrars do not facilitate the transfer of
     the Subject Domain Names to Chanel's control within ten (10) days of receipt of this

5    judgment, the United States based Registries shall, within thirty (30) days, transfer
     the Subject Domain Names to a United States based Registrar of Chanel's choosing,

6    and that Registrar shall transfer the Subject Domain Names to Chanel; and

7    (m) Upon Chanel's request, the top level domain (TLD) Registries, or their
     administrator, for each of the Subject Domain Names within thirty (30) days of

8    receipt of this Order, shall place the Subject Domain Names on Registry Hold status
     for the life of the current registration, thus removing them from the TLD zone files

9    maintained by the Registry which link the domain names to the IP addresses where
     the associated websites are hosted.[4]

10   Proposed Final Default Judgment and Permanent Injunction.  See Docket No. 19-1.

11          Plaintiff has established Defendant's ownership and control over the 69 websites identified

12   in Appendix A to the Court's April 14, 2011 Order.  See Dkt. 40, Appendix A.  The requested

13   injunctive relief is necessary to prevent Defendant from unlawfully infringing upon Chanel's marks

14   with respect to these sixty-nine websites.  With respect to the remaining 107 websites, Plaintiff

15   alleges three additional bases for tying the websites to Defendant.

16          First, relying on the Court's finding in the April 14, 2011 order that "sites providing an email

17   address identical to one tied directly to US880 are under Defendant's ownership and control,"

18   Plaintiff alleges that the website ecspeed.com can be tied directly to Defendant.  See Dkt. 40 at p. 3.

19   The contact email address for ecspeed.com is dreaming987@163.com.  See Declaration of Stephen

20   M. Gaffigan in Support of Plaintiff's Second Supplemental Brief in Support of Motion for Final

21   Default Judgment at Comp. Ex. 1 (Dkt. 47-1).  The Court previously found that because the contact

22   email address for US880 contained in the WHOIS data registration records is

23   dreaming987@163.com any website using dreaming987@163.com as the contact information can

24   be reliably tied to Defendant.  See Dkt. 40 at p. 3.  The ecspeed.com website purports to be an online

25

26   _____

27          [4] Plaintiff's Supplemental Brief in Support of Motion for Entry of Final Default Judgment states
     that "if the Court orders the transfer of the domain names to the Plaintiff as described in Paragraph 2(l)

28   of the Proposed Final Judgment, then Paragraph 2(m) of the Proposed Final Judgment will be
     superfluous, because Plaintiff will have the ability to disable the Subject Domain Names itself."  Dkt.
     38 at p. 11.

United States District Court
For the Northern District of California

1  marketplace, whereby a merchant can create an online store and sell products directly to interested

2  buyers.  See Declaration of Brandon Tanori in Support of Plaintiff's Second Supplemental Brief in

3  Support of its Motion for Entry of Final Default Judgment ¶ 4 & Ex. 1 (Dkt. 47-6).  However,

4  Plaintiff's private investigator was unable to set up an e-store via ecspeed.com.  See id. at ¶¶ 3-7.

5  Plaintiff alleges that rather than acting as an online marketplace, ecspeed.com instead operates as a

6  common distribution platform for the sale of products bearing counterfeits and infringement of

7  Chanel's trademarks; specifically, Plaintiff alleges that ecspeed.com acts to direct customers to one

8  of Defendant's seventy-six other websites listed in the Store Directory all of which offer counterfeit

9  Chanel branded goods.  See Dkt. 47-1 ¶ 4 & Dkt. 47-3.  The ecspeed.com website states that it is

10  responsible for "[p]ayment, product delivery and after-sale support" for merchants listed on its site

11  and states that a commission can be earned for "each click generated."  See Dkt. 47-3.  Plaintiff thus

12  alleges that Defendant is a joint tortfeasor actively contributing to and participating in causing

13  irreparable injury and damages to Chanel by supporting and supplying inventory to the websites

14  operating on the ecspeed.com directory.  The Court finds that Plaintiff has adequately tied these 76

15  websites to Defendant and that they are under Defendant's ownership and control.[5]

16      Second, Plaintiff offers evidence that the WHOIS domain registration report for the website

17  9keyshow.com identifies its contact email address as dreaming987@163.com.  See Dkt. 47-1 ¶ 3 &

18  Dkt. 47-3.  In accordance with the Court's prior finding, Plaintiff has shown that 9keyshow.com is

19  also under Defendant's ownership and control.

20

21  _____

22      [5]   These websites are as follows: 09handbags.com, 2youwatch.com, 4ezlive.com, 8bags4you.com, abercrombiepop.com, asapshops.com, bagslike.com, bagsvip.com, belovewatch.com,

23  bestemplet.com, bestsheshox.com, bikiniszone.com, bosebuynow.com, brandsupplieronline.com, buddytrade.com, buyonebag.com, cartggo.com, clothinggogo.com, dvdlift.com, dvdsheaven.com,

24  dvdspop.com, ecabroad.com, ecsalesonline.com, ecsharings.com, enjoyalley.com, feelmoving.com, firsttidebags.com, flat-ironchi.com, gahoos.com, globalprada.com, godshopking.com,

25  godshops.com, hotandpop.com, inexquisite.com, inthego.org, jeanecb.com, londonlinksinc.com, lovegymshoes.com, luxuryinbags.com, macygood.com, mazillas.com, meishucheng.com,

26  mydvddvds.com, mygoodwatches.com, mylovinearphone.com, mylovintech.com, myoxette.com, mysterybuying.com, mywatchestore.com, netabercrombie.com, njlp.net, nokiasphone.com,

27  officalsell.com, okeyby.com, oncomes.com, ondunk.com, onexquisite.com, onlinenbastar.com, ordernokia.com, passsale.com, plubrands.com, popdksb.com, poportop.com, poppolo4you.com,

28  populashow.com, realafestate.com, shoppingyouself.com, thelinksuk.com, themydvd.com, thewebdvd.com, watch11.com, watchesteam.com, watchtoyou.com, webfashionsite.com, webgoshop.com, and wristwatchnew.com. See Dkt. 47-1¶ 2 & Dkt. 47-3.

United States District Court
For the Northern District of California

Third, Plaintiff contends that image file sharing connects Defendant with seven additional websites.  Plaintiff alleges that file sharing was used to connect the websites justforbag.com, outputbag.com, cooltimberland.com, sunglasses-hut.com, fashionwatches4sales.com, imitatwatch.com and imitatewatches.com to Defendant.  See Dkt. 47-1 ¶ 6.  Plaintiff alleges that these websites use identical files to store the images of Chanel branded products as those used on websites that the Court previously found to be under Defendant's ownership and control.  According to Plaintiff, in cases where identical file images are used on multiple websites the images from each website are generally maintained on one Domain Name System server which indicates a common owner.  Chanel's attorney Stephen M. Gaffigan states that he has personally observed the websites justforbag.com and outputbag.com use the same image file name for the same Chanel branded handbag offered for sale on the website belovebags.com.  See id.  Similarly, Gaffigan alleges that the same image file name was used for a Chanel branded watch on cooltimberland.com as on timberlander.com and watchesagent.com.  See id.  This is also true for the image file name for a pair of Chanel branded sunglasses offered for sale on sunglasess-hut.com and dearsunglasses.com.  See id.  Because the Court previously found that belovebags.com, timerlander.com, watchesagent.com and dearsunglass.com are all under Defendant's ownership and control the four additional websites using identical file names are also found to be under Defendant's ownership and control.[6]

Plaintiff also asserts that the websites fashionwatches4sales.com, imitatewatch.com and imitatewatches.com all use images with identical file names to sell a Chanel branded watch.  See id.  However, Plaintiff has not tied these three websites to a website previously determined to be under Defendant's ownership and control.  Accordingly, the Court finds that there is insufficient evidence to tie the websites fashionwatches4sales.com, imitatewatch.com and imitatewatches.com to Defendant.

With respect to the remaining 23 websites, Plaintiff merely states that it previously "submitted evidence regarding external links between the websites to support its contention that Defendant is also the owner and operator of those websites."  See Dkt. 47 at p. 9.  However, the

---

[6]  The four additional websites are justforbag.com, outputbag.com, cooltimberland.com and sunglasses-hut.com.

**United States District Court**
For the Northern District of California

1    Court previously found this evidence insufficient.  See Dkt. 40 at p. 5.  Plaintiff previously agreed to

2    withdraw its request for relief regarding these websites if the Court finds Chanel's previously

3    submitted evidence insufficient.  The Court declines to revisit Judge Chen's April 14, 2011 finding.

4    Accordingly, Plaintiff's request for Default Judgment as to the remaining 23 websites is deemed

5    withdrawn.

6         Accordingly, the Court finds that Plaintiff has established Defendant's ownership or control

7    over the 150 websites listed in Appendix A attached to this Order.  The Court recommends that

8    Plaintiff's request for injunctive relief be granted as to the websites identified in Appendix A

9    attached hereto.[7]

10        **B.    Statutory Damages**

11        Chanel seeks an award of statutory damages for Defendant's trademark counterfeiting and

12   infringement.  The Lanham Act provides that a trademark owner may recover "(1) defendant's

13   profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. §

14   1117(a).  In lieu of damages based on lost profits, a plaintiff may elect to receive an award of

15   statutory damages in trademark actions involving use of a counterfeit mark.  15 U.S.C. § 1117(c)(1).

16    A court may award  "not less than $1,000 or more than $200,000 per counterfeit mark per type of

17   goods or services sold, offered for sale, or distributed, as the court considers just" in statutory

18   damages.  Id.   In cases of willful infringement a court may award "not more than $2,000,000 per

19   counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court

20   considers just."  15 U.S.C. § 1117(c)(2).  "Willfulness can be established by evidence of knowing

21   conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights—in

22   other words, that the defendant willfully blinded himself to facts that would put him on notice that

23   he was infringing another's trademarks, having cause to suspect it."  Philip Morris USA Inc. v. Liu,

24   489 F. Supp.2d 1119, 1123 (C.D. Cal. 2007) (internal quotation marks and citation omitted).

25        A court has wide discretion in determining the amount of statutory damages.  Chanel, Inc. v.

26   Lin, No. 09-cv-04996, 2010 WL 2557503, at *13 (N.D. Cal. May 7, 2010).  Section 1117(c) does

27

28        [7]  Plaintiff is entitled to the injunctive relief requested in parts (a)-(l) of the Proposed Order
Granting Final Default Judgment, the relief requested in paragraph (m) is deemed withdrawn.

United States District Court
For the Northern District of California

not provide specific guidance as to how a court should calculate statutory damages.  Many courts rely on the following factors which are used to determine statutory damages under an analogous provision of the Copyright Act:  (1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  See, e.g., Coach, Inc. v. Diva Shoes & Accessories, No. 10–5151, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011); Gucci America, Inc. v. Wang Huoqing, No. 09-05969, 2011 WL 31191, at *15-16 (N.D. Cal. Jan. 3, 2011); Chanel, Inc. v. Lin, No. 09-04996, 2010 WL 2557503, at *13 (N.D. Cal. May 7, 2010).   The Court considers each of these factors below.

First, with respect to the expenses saved and the profits reaped by Defendant, Chanel alleges generally that Defendant's ownership of a large quantity of websites supports an inference that Defendant has engaged in a high volume of sales of its counterfeit versions of Chanel's products.  However, absent specific evidence of Defendant's savings or profits, this allegation does not assist the Court with the statutory damages determination.   Second, as to revenues lost, Chanel has not provided specific evidence as to its loss of revenue.  This fact, therefore, is not probative to the statutory damages decision.  Third, as to the value of the intellectual property, Plaintiff alleges that it has "expended substantial time, money and other resources developing, advertising and otherwise promotion the Chanel Marks." Dkt 1. ¶ 13.   In a similar case in considering this factor the court found that "[t]he Chanel trademarks are strong, i.e., distinctive marks, and therefore their value is significant." See Chanel, Inc. v. Tshimanga, Case No. 07-03592, 2008 U.S. Dist. LEXIS 118783, at *40 (N.D. Cal. Jul. 15, 2008).  Fourth, as for the deterrent effect on others besides the Defendant, presumably a significant award of statutory damages would have a deterrent effect.  Fifth, in considering whether Defendant's conduct was innocent or willful, the court looks to whether the defendant has knowingly and intentionally infringed on the plaintiff's intellectual property rights. See Adobe Systems, Inc. v. Taveira, No. 08-243, 2009 WL 506861, at *5 (N.D. Cal. Feb. 27, 2009). Here, Plaintiff alleges that Defendant intended to trade on the reputation and goodwill of the Chanel

23

United States District Court
For the Northern District of California

1  trademarks and the evidence supports this allegation.  See Dkt. 22-3; Dkt. 50-1.  The Court

2  accordingly finds that Defendant's conduct was willful.  Sixth, the Court considers whether the

3  defendant has cooperated in providing records.  Because Defendant has failed to appear in this

4  action, this factor is not applicable.  Seventh, as to the potential for deterring the defendant, although

5  a sizable damages award would ordinarily be a deterrent, because Defendant resides in China and

6  Plaintiff has been unable to physically locate Defendant's offices, enforcing the judgment here may

7  prove difficult thus undermining the deterrent effect.  See Gucci America, Inc. v. Wang Huoqing,

8  No. 09-05969, 2011 WL 31191, at *16 (N.D. Cal. Jan. 3, 2011).  The Court nevertheless concludes

9  that on the whole the factors support an award of statutory damages.

10          As for the calculation of damages, Plaintiff initially requested an award of $3,000.00 per

11  registered Chanel trademark (eleven) per type of goods sold (totaling six – handbags, wallets,

12  watches, sunglasses, scarves, and swimwear) for a total award of $198,000.00 ($3,000 x 66

13  infringements).   This calculation is based on the statutory minimum of $1,000.00 per counterfeit

14  mark per type of good sold trebled to reflect Defendant's willfulness.  In the Court's April 14, 2011

15  order, Judge Chen found this calculation methodology to be sound noting that "Plaintiff alleges that

16  Defendant's have knowingly sold or offered for sale goods bearing marks which are identical to the

17  Chanel Marks with the intent to capitalize on the reputation and goodwill of the marks, and Plaintiff

18  has provided evidence of the infringement of its marks."  See Dkt. 40 at p. 1.   However, the Court

19  also found two shortcomings with Chanel's request.  First, the Court found that Plaintiff had not

20  proven 66 infringements because the infringement table did not specify the type of good infringing

21  on each mark.  See Dkt.40 at p. 2.  Second, the Court found that "many of the cited exemplars of

22  particular infringements are websites which have not been sufficiently proven to be under the

23  control and ownership of Defendant."  See id.

24          Plaintiff accordingly revised its request for statutory damages and now seeks $45,000.00

25  based on 15 total infringements.  As reflected in the Corrected Exhibit 4 to the Gaffigan Declaration

26  submitted with Plaintiff's Second Supplemental Brief, for each trademark Chanel has identified at

27  least one infringement, that is a website offering a counterfeited Chanel branded good for sale.  See

28  Dkt. 50-1.  The calculation proposes that eight of the Chanel trademarks were infringed by one

1  good, two were infringed by two goods and one trademark was infringed by three goods.[8]   For each

2  violation Plaintiff has provided a web page printout from a website previously found to be under

3  Defendant's ownership or control depicting a counterfeit Chanel trademarked good for sale.  The

4  Court finds that Plaintiff's statutory damages request is reasonable, and therefore the Court

5  recommends that Chanel be awarded $45,000.00 in damages for Defendant's infringement of

6  Chanel's protected trademarks.

7      **C.      Costs**

8      Chanel also seeks an award of costs in the amount of $700.00 consisting of the filing fee

9  ($350.00) and the process server fees ($350.00).  The Court recommends that these costs be awarded

10  pursuant to 28 U.S.C. § 1920 and Civil Local Rule 54-3(a).

11      **D.      Prejudgment Interest**

12      Plaintiff has also sought an award of prejudgment interest in this case.  Under 15 U.S.C. §

13  1117(b), where the court finds intentional use of a mark or designation as defined in section 1116(d)

14  of the same title, "the court may award prejudgment interest on such amount at an annual interest

15  rate established under section 6621(a)(a) of title 26, beginning on the date of service of the

16  claimant's pleading setting forth the claim for such entry of judgment and ending on the date such

17  entry is made, or for shorter time as the court considers appropriate."  15 U.S.C. § 1117(b).  Given

18

19

20

21

22      [8]  The specific calculation is set forth in the Corrected Version of Exhibit 4 to Stephen M.

23  Gaffigan's Declaration in Support of Plaintiff's Second Supplemental Brief in Support of Motion for
    Default Judgment filed July 1, 2011. Dkt. 50-1.   It is as follows:  Trademark Registration No.

24  0,626,035 x 1 good (handbags) x $3,000.00 = $3,000.00; Trademark Registration No. 0.955,074 x 1
    good (watches) x $3,000.00 = $3,000.00;  Trademark Registration No. 1,314,511 x 1 good (handbags)
    x $3,000.00 = $3,000.00;  Trademark Registration No. 1,347,677 x 1 good (handbags) x $3,000.00 =

25  $3,000.00;   Trademark Registration No. 1,571,787 x 1 good (watches) x $3,000.00 = $3,000.00;
    Trademark Registration No. 1,733,051 x 2 goods (handbags and wallets) x $6,000.00 = $6,000.00;

26  Trademark Registration No. 1,734,822 x 2 goods (handbags and wallets) x $6,000.00 = $6,000.00;
    Trademark Registration No. 2,559,772 x 1 good (watches) x $3,000.00 = $3,000.00;   Trademark

27  Registration No. 3,022,708 x 3 goods (sunglasses, handbags and swimwear) x $9,000.00 = $9,000.00;
    Trademark Registration No. 3,025,934 x 1 good (handbags) x $3,000.00 = $3,000.00;   Trademark

28  Registration No. 3,133,139 x 1 good (watches) x $3,000.00 = $3,000.00.  The total for these violations
    is $45,000.00.

1   the Court's finding regarding Defendant's intentional use of Plaintiff's trademarks, the Court finds

2   that an award of prejudgment interest is proper.[9]

3   **CONCLUSION**

4       Based on the foregoing, the Court recommends that  Chanel's Motion for Default Judgment

5   be GRANTED against the Defendant on Plaintiff's trademark infringement and false designation of

6   origin claims.  The Court recommends that Chanel be awarded $45,700.00 in statutory damages and

7   costs, plus prejudgment interest.  The Court further recommends that a permanent injunction be

8   entered against Defendant as follows:

9       Defendant and its respective officers, agents, servants, employees and attorneys, and all
        persons in active concert and participation with it are hereby restrained and enjoined from:

11          (a) manufacturing or causing to be manufactured, importing, advertising, or
            promoting, distributing, selling or offering to sell counterfeit and infringing
            goods using the Chanel Marks;

13          (b) using the Chanel Marks in connection with the sale of any unauthorized
            goods;

14          (c) using any logo, and/or layout which may be calculated to falsely advertise
            the services or products of the Defendant, the websites identified in Appendix
15          A attached hereto, and/or any other website or business, as being sponsored
            by, authorized by, endorsed by, or in any way associated with Chanel;

17          (d) falsely representing itself as being connected with Chanel, through
            sponsorship or association;

18          (e) engaging in any act which is likely to falsely cause members of the trade
            and/or of the purchasing public to believe any goods or services of the
19          Defendant, the websites identified in Appendix A attached hereto, and/or any
            other website or business, are in any way endorsed by, approved by, and/or
20          associated with Chanel;

21          (f) using any reproduction, counterfeit, copy, or colorable imitation of the
            Chanel Marks in connection with the publicity, promotion, sale, or advertising
22          of any goods sold by the Defendant, the websites identified in Appendix A
            attached hereto, and/or any other website or business, including, without
23          limitation, handbags, wallets, and watches;

24          (g) affixing, applying, annexing or using in connection with the sale of any
            goods, a false description or representation, including words or other symbols
25          tending to falsely describe or represent goods by the Defendant, the websites
            identified in Appendix A attached hereto, and/or any other website or
26          business, as being those of Chanel, or in any way endorsed by Chanel;

---

28          [9]  Plaintiff did not provide the Court with the information necessary to calculate the award of
        prejudgment interest.  See 26 U.S.C. § 6621(a)(2).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1     (h) offering such goods in commerce;

2     (i) and from otherwise unfairly competing with Chanel;

3     (j) secreting, destroying, altering, removing, or otherwise dealing with the
unauthorized products or any books or records which contain any information
4     relating to the importing, manufacturing, producing, distributing, circulating,
selling, marketing, offering for sale, advertising, promoting, renting or
5     displaying of all unauthorized products which infringe the Chanel Marks; and

6     (k) effecting assignments or transfers, forming new entities or associations or
utilizing any other device for the purpose of circumventing or otherwise
7     avoiding the prohibitions set forth above; and

8     (2) Additional Equitable Relief:

9     (l) The websites identified in Appendix A attached hereto are hereby ordered
to be immediately transferred by the Defendant, its assignees and/or
10     successors in interest or title, and the Registrars to Chanel's control. To the
extent the current Registrars do not facilitate the transfer of the websites
11     identified in Appendix A attached hereto to Chanel's control within ten (10)
days of receipt of this judgment, the United States based Registries shall,
12     within thirty (30) days, transfer the websites identified in Appendix A
attached hereto to a United States based Registrar of Chanel's choosing, and
13     that Registrar shall transfer the websites identified in Appendix A attached
hereto to Chanel.

14     Any party may file objections to this report and recommendation with the district judge

15     within ten days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b);

16     Civil L.R. 72-3.

17

18

19     _____

Dated: July 5, 2011                          JACQUELINE SCOTT CORLEY
20                                          UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1                                  **APPENDIX A**

1.       360gome.com
2.       atthego.com
3.       bagsagent.com
4.       belovebags.com
5.       belovewrist.com
6.       leaderol.com
7.       officalugg.com
8.       runtimberland.com
9.       shopkiss.com
10.      timberlander.com
11.      timberlandsou.com
12.      watchesagent.com
13.      bagshow.biz
14.      sexyhygeia.com
15.      80trade.com
16.      abercrombiesales.com
17.      abercrombiestar.com
18.      allbestdvd.com
19.      bagsontheway.com
20.      bapeshopping.com
21.      basemall.info
22.      hotsalex.com
23.      ilikebuy.com
24.      ireplicachoice.com
25.      ispv.net
26.      kicksbap.com
27.      kicksboots.com
28.      mixitems.com
29.      mysoftware123.com
30.      onairbuy.com
31.      order24hours.com
32.      order2you.com
33.      youmestore.com
34.      topairmax.com
35.      topofbikini.com
36.      thehandbagssale.com
37.      software4cpu.com
38.      shixy.com
39.      sellelec.com
40.      selinged.com
41.      robbtrade.com
42.      progiftstore.com
43.      pearltop.com
44.      gsshring.com
45.      gototbl.com
46.      golinksoflondon.com
47.      fangpinb2b.com
48.      fangpin.net
49.      fallowtrade.org
50.      e-superbuyer.com
51.      edhardyshow.com
52.      ed-hardys.com
53.      ecspeed.com
54.      ecshopking.com
55.      ecgoshop.com
56.      ecgohere.com

**United States District Court**
For the Northern District of California

57. ecbape.com
58. easydoing.org
59. dvdsword.com
60. dearpolo.com
61. dearmobiles.com
62. dearbridal.com
63. clortsblog.org
64. bikinismark.com
65. bikinionlineshop.com
66. webmydvd.com
67. victor88.com
68. selingbags.com
69. dearsunglass.com
70. 09handbags.com
71. 2youwatch.com
72. 4ezlive.com
73. 8bags4you.com
74. abercrombiepop.com
75. asapshops.com
76. bagslike.com
77. bagsvip.com
78. belovewatch.com
79. bestemplet.com
80. bestsheshox.com
81. bikiniszone.com
82. bosebuynow.com
83. brandsupplieronline.com
84. buddytrade.com
85. buyonebag.com
86. cartggo.com
87. clothinggogo.com
88. dvdlift.com
89. dvdsheaven.com
90. dvdspop.com
91. ecabroad.com
92. ecsalesonline.com
93. ecsharings.com
94. enjoyalley.com
95. feelmoving.com
96. firsttidebags.com
97. flat-ironchi.com
98. gahoos.com
99. globalprada.com
100. godshopking.com
101. godshops.com
102. hotandpop.com
103. inexquisite.com
104. inthego.org
105. jeanecb.com
106. londonlinksinc.com
107. lovegymshoes.com
108. luxuryinbags.com
109. macygood.com
110. mazillas.com
111. meishucheng.com
112. mydvddvds.com
113. mygoodwatches.com
114. mylovinearphone.com

**United States District Court**
For the Northern District of California

115.  mylovintech.com
116.  myoxette.com
117.  mysterybuying.com
118.  mywatchestore.com
119.  netabercrombie.com
120.  njlp.net
121.  nokiasphone.com
122.  officalsell.com
123.  okeyby.com
124.  oncomes.com
125.  ondunk.com
126.  onexquisite.com
127.  onlinenbastar.com
128.  ordernokia.com
129.  passsale.com
130.  plubrands.com
131.  popdksb.com
132.  poportop.com
133.  poppolo4you.com
134.  populashow.com
135.  realafestate.com
136.  shoppingyouself.com
137.  thelinksuk.com
138.  themydvd.com
139.  thewebdvd.com
140.  watch11.com
141.  watchesteam.com
142.  watchtoyou.com
143.  webfashionsite.com
144.  webgoshop.com
145.  wristwatchnew.com
146.  9keyshow.com
147.  justforbag.com
148.  outputbag.com
149.  cooltimberland.com
150.  sunglasses-hut.com